**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| BETHEL MINISTRIES, INC.,<br>9001 Vollmerhausen Road<br>Savage, MD 20763<br>Howard County<br><br>     *Plaintiff*,<br><br>DR. KAREN B. SALMON, in her<br>official capacity as State Superintendent;<br>MATTHEW GALLAGHER, in his<br>official capacity as Chair of the BOOST<br>Advisory Board; MARVA JO CAMP,<br>LINDA EBERHART, DR. NANCY S.<br>GRASMICK, ELIZABETH GREEN,<br>BETH SANDBOWER HARBINSON,<br>and DR. A. SKIPP SANDERS, all in<br>their official capacities as members of<br>the BOOST Advisory Board,<br>200 West Baltimore Street<br>Baltimore, MD 21201<br>City of Baltimore<br><br>     *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW the Plaintiff, BETHEL MINISTRIES, INC., by counsel and for its causes of action against Defendant DR. KAREN B. SALMON, in her official capacity as State Superintendent of the Maryland State Department of Education, Defendant MATTHEW GALLAGHER, in his official capacity as Chair of the BOOST Advisory Board, and Defendants MARVA JO CAMP, LINDA EBERHART, DR. NANCY S. GRASMICK, ELIZABETH A. GREEN, BETH SANDBOWER HARBINSON, and DR. A. SKIPP SANDERS, in their official capacities as members of the BOOST Advisory Board, alleges and states the following:

## INTRODUCTION

1.     Bethel Ministries, Inc. (Bethel) is a Christian ministry with a desire to love and serve the Savage, Maryland community.

2.     As part of its outreach, Bethel runs a private Christian school, Bethel Christian Academy, devoted to the core values of authentic Christianity, academic excellence, and advancing community.

3.     Approximately 20% of Bethel's students qualify to receive free or reduced-price lunches.

4.     Bethel Christian Academy applied for—and received—scholarship funding for some of its students from low-income families through the Broadening Options and Opportunities for Students Today (BOOST) Program.

5.     For the two years Bethel participated in BOOST, the Program required that participating schools not discriminate in student admissions based on sexual orientation.

6.     Bethel also participated in the Nonpublic Textbook and Technology Program, and the Nonpublic Aging Schools Program, which have the same admissions nondiscrimination requirements as BOOST does.

7.     Bethel has not, and will not, discriminate against a student in admissions based on an applicant's sexual orientation.

8.     But because of Bethel Christian Academy's religious belief that marriage is the union of one man and one woman, and its belief that biological sex is an immutable gift from God, Maryland officials excluded Bethel from participating in BOOST, putting at risk the students who attend the school based on this scholarship funding.

9.     Worse, State officials demanded that Bethel pay back the over $100,000 in

scholarship funding that Bethel had received through the BOOST Program during the two years it participated in the Program.

10.     State officials revoked Bethel's eligibility for BOOST, despite Bethel's compliance with the nondiscrimination requirement.

11.     State officials revoked Bethel's eligibility for BOOST, despite clear Program language stating that nothing shall require any school to adopt a rule, regulation, or policy that conflicts with its religious teachings.

12.     State officials revoked Bethel's eligibility for BOOST, despite clear Supreme Court precedent that government hostility towards the religious belief that marriage is the union of a man and a woman has no place in our society.

13.     The State's BOOST decision also rendered Bethel ineligible for the Textbook and Technology and Aging Schools grant programs.

14.     Bethel Ministries, Inc., therefore brings this action pursuant to 42 U.S.C. § 1983 for violation of its civil rights.

## **JURISDICTION AND VENUE**

15.     This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and 42 U.S.C. §§ 1983 and 1988.

16.     This Court is vested with original jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1343.

17.     This Court is vested with authority to grant the requested declaratory judgment under 28 U.S.C. § 2201, *et seq*.

18.     This Court has jurisdiction to award the requested injunctive relief under 28 U.S.C. § 1343.

19. This Court has jurisdiction to award reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

20. Venue is proper in United States District Court for the District of Maryland under 28 U.S.C. § 1391(b), because Defendants reside in the District of Maryland, and the events giving rise to the claim occurred within the District of Maryland.

## PARTIES

21. Plaintiff Bethel Ministries, Inc., is a Christian ministry and part of The General Council of the Assemblies of God and the Potomac District Council of The Assemblies of God, established and existing as a non-profit religious corporation under the laws of the State of Maryland. As part of its religious mission, and under the same legal entity, Bethel Ministries, Inc., operates Bethel Christian Academy.

22. Bethel's principal place of business is located at 9001 Vollmerhausen Road, Savage, MD 20794.

23. Defendant Dr. Karen B. Salmon is the State Superintendent of Schools for the Maryland State Department of Education, which administers the BOOST Scholarship Program. She is sued in her official capacity only.

24. Defendant Matthew Gallagher is the Chair of the BOOST Advisory Board, which oversees the BOOST Program. He is sued in his official capacity only.

25. Defendants Marva Jo Camp, Linda Eberhart, Dr. Nancy S. Grasmick, Elizabeth A. Green, Beth Sandbower Harbinson, and Dr. A. Skipp Sanders are members of the BOOST Advisory Board, which oversees the BOOST Program. They are sued in their official capacities only.

## STATEMENT OF FACTS

### Bethel Ministries, Inc. and Its Religious Mission

26.     Bethel Ministries, Inc., is a Pentecostal Christian church in Savage, Maryland, with a desire to love and serve its community.

27.     Bethel's religious beliefs and related practices are based on Holy Scripture and the teachings of the Assemblies of God.

28.     As part of its religious mission, Bethel operates Bethel Christian Academy, a private school for students in preschool through eighth grade.

29.     Founded in 1984, Bethel's mission is to create an authentic Christian learning community to train students to know, love, and serve the Lord Jesus Christ, and to equip students spiritually and academically to be lights to the world.

30.     Bethel desires to produce academically equipped youth who demonstrate their commitment to Christ by exhibiting love toward others, strong biblical convictions, and a desire to impact the world for Christ.

31.     Once a week, students participate in a chapel service where they have the opportunity to worship and hear Bible teaching.

32.     The Bible is core to Bethel's curriculum; it is thoroughly integrated throughout all subjects.

33.     Bethel teaches its students the basic tenets of the Christian faith using the Bible and published curriculum materials.

34.     The school's goal-oriented curriculum is designed to result in not only high academic achievement, but also to establish a foundation firmly anchored in biblical truth.

35.     Bethel is committed to interactive, hands-on learning and the growing use of educational technology in the classroom.

**Bethel's Admissions Standards**

36.     For the 2018-2019 school year, Bethel has 281 enrolled students in preschool through 8th grade.

37.     Bethel serves an ethnically and socioeconomically diverse student population.

38.     Over 85% of Bethel's current student population is nonwhite.

39.     Bethel's student population represents approximately 40 different nations.

40.     Approximately 20% of Bethel's students qualify to receive free or reduced-price lunches.

41.     Admission to Bethel is competitive, and based on a student's skills assessment or formal entrance exam, evaluation of previous grades and behavior, and a pre-enrollment interview.

42.     Bethel's religious beliefs and related practices are summarized in its 2017-2018 Parent/Student Handbook (attached as Exhibit 1).

43.     Bethel does not require students or their parents to be professing Christians, or agree with Bethel's statement of faith.

44.     But students are required to comply with the school's faith-based conduct policies, including its codes of conduct.

45.     Parents must agree to support Bethel's core values, school policies, and codes of conduct.

46.     Bethel's nondiscrimination statement, which is reflected in its 2017-2018 Parent/Student Handbook, states that Bethel does not discriminate based on race, color, or national or ethnic origin, in its educational policies, admissions policies, scholarship and loan programs,

and athletic and other school-administered programs. *See* Ex. 1.

47.     Bethel has not, and will not, deny an applicant admission to Bethel based on the sexual orientation of the applicant.

**Bethel's Conduct Standards**

48.     As a distinctly Christian school, Bethel believes that marriage is exclusively the covenantal union of one man and one woman.

49.     As a distinctly Christian school, Bethel believes that God immutably created each person in His image as either male or female.

50.     Faculty, staff, and students are expected to align their conduct with Bethel's belief that marriage is the union of one man and one woman.

51.     Faculty, staff, and students are expected to align their conduct with Bethel's belief that biological sex as either male or female is an immutable gift from God, and therefore identify with, dress in accordance with, conduct themselves in keeping with, use the pronouns associated with, and use the facilities provided for, their biological sex.

52.     Bethel's conduct policy prohibits harassment and inappropriate relationships (including physical contact or public displays of affection).

53.     Bethel's conduct policy prohibits any communication of a sexual nature, such as identifying as the opposite sex, or expressing romantic attraction towards another student.

54.     Additionally, any illegal or immoral behavior that is in violation of the school's statement of faith will be considered grounds for disciplinary action.

55.     Violations of Bethel's conduct policy will be addressed with disciplinary action. Bethel's administration reserves the right to use its discretion in determining whether behavior is serious enough to warrant detention, suspension, or expulsion.

56.     If a student persists in violation of Bethel's conduct policy, and is unrepentant and unresponsive to correction, the student may be required to leave the school community.

57.     Bethel requires its students to adhere to the dress code requirements for their biological sex and grade level.

58.     Bethel refers to students by the pronouns consistent with their biological sex.

59.     Bethel will not permit its sex-specific facilities to be accessed by members of the opposite biological sex.

**The BOOST Program and Bethel's Participation**

60.     In 2016, the Maryland legislature passed a Fiscal Year 2017 budget bill establishing the Broadening Options and Opportunities for Students Today (BOOST) Program.

61.     The Maryland legislature has reauthorized funding for the BOOST Program in each subsequent fiscal year.

62.     BOOST provides scholarships for students who are eligible for the free or reduced-price lunch program to attend eligible nonpublic schools.

63.     The BOOST Program is administered by the Maryland State Department of Education (MSDE).

64.     MSDE is authorized to establish procedures for the scholarship application and award process, compile and certify a list of eligible applicants that ranks students by family income, and make scholarship awards.

65.     The BOOST Advisory Board is comprised of seven appointed members.

66.     The BOOST Advisory Board is authorized to review and certify the ranked list of student applicants and determine scholarship award amounts.

67.     Schools participating in the BOOST Program must agree to not discriminate in student admissions based on sexual orientation, among other categories. *See* FY 2018 Budget Language, *attached as* Exhibit 2.

68.     However, the BOOST nondiscrimination requirement does not "require any school or institution to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings."

69.     The BOOST nondiscrimination requirement does not define sexual orientation or discrimination.

70.     The BOOST nondiscrimination requirement does not require schools to adopt particular policies or policy language.

71.     During the 2016-2017 and 2017-2018 academic years, the BOOST nondiscrimination requirement did not include gender identity or gender expression.

72.     Bethel participated in the BOOST Program in academic years 2016-2017 and 2017-2018.

73.     Bethel signed the MSDE assurance that it does not discriminate in admissions based on sexual orientation.

74.     Bethel met and complied with all of MSDE's eligibility requirements to participate in the BOOST scholarship program during the 2016-2017 and 2017-2018 academic years.

75.      During the 2016-2017 academic year, 17 Bethel students received BOOST scholarships.

76.     During the 2017-2018 academic year, 18 Bethel students received BOOST scholarships.

**Bethel's Participation in Other MSDE Programs**

77.   MSDE operates two additional programs for nonpublic schools: the Textbook and Technology and the Aging Schools Programs.

78.   The Nonpublic Schools Textbook and Technology Program purchases textbooks and computer hardware and software to loan to students at eligible nonpublic schools.

79.   The Nonpublic Aging Schools Program provides funds to nonpublic schools for capital improvement projects for aging buildings.

80.   Nonpublic schools must be eligible for the Textbook and Technology Program to apply for the Aging Schools Program.

81.   Nonpublic schools must be eligible for the Textbook and Technology Program to apply for the BOOST Program.

82.   Like BOOST, schools participating in the Textbook and Technology and Aging Schools Programs for the 2016-2017 and 2017-2018 academic years had to agree not discriminate in student admissions based on sexual orientation, among other categories.

83.   Like BOOST, the Textbook and Technology and Aging Schools' nondiscrimination requirements do not "require any school or institution to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings."

84.   The Textbook and Technology and Aging Schools' nondiscrimination requirements do not define sexual orientation or discrimination.

85.   The Textbook and Technology and Aging Schools' nondiscrimination requirements do not require schools to adopt particular policies or policy language.

86.   In the 2016-2017 and 2017-2018 academic years, the Textbook and Technology and Aging Schools' nondiscrimination requirements did not include gender identity or gender expression.

87.     Bethel signed the MSDE assurances that it does not discriminate in admissions based on sexual orientation.

88.     Bethel met and complied with all of MSDE's eligibility requirements to participate in the Textbook and Technology Program.

89.     Bethel met and complied with all of MSDE's eligibility requirements to participate in the Aging Schools Program.

90.     Bethel participated in the Textbook and Technology Program in academic years 2016-2017 and 2017-2018, among others.

91.     Bethel participated in the Aging Schools Program in academic years 2016-2017 and 2017-2018, among others.

### Bethel's Denial of BOOST Funding

92.     Upon information and belief, MSDE began investigating the policy language of BOOST schools in the fall of 2017.

93.     Upon information and belief, this action was not prompted by any allegation of discrimination in student admissions that would violate the BOOST nondiscrimination requirement.

94.     In December 2017, MSDE requested handbooks from schools participating in BOOST for review.

95.     In December 2017, MSDE requested Bethel's parent-student handbook.

96.     Bethel provided MSDE its 2017-2018 Parent/Student handbook.

97.     On January 9, 2018, Maryland's Office of the Attorney General issued a memo to Defendant Gallagher and Monica Kearns on enforcing BOOST nondiscrimination requirements.

98.     The January 9 memo indicated that MSDE could consider schools noncompliant with BOOST nondiscrimination requirements without allegations of sexual orientation discrimination in student admissions.

99.     The January 9 memo indicated that MSDE could consider schools noncompliant with BOOST nondiscrimination requirements solely on the basis of school policy language that addressed same-sex sexual conduct by admitted students, rather than the sexual orientation of applicants for admission.

100.    On February 13, 2018, MSDE informed Bethel that Bethel's policies rendered it ineligible for the Textbook and Technology Program.

101.    MSDE referenced the handbook review that was taking place for the BOOST program, and said that Bethel's policy did not comply with the Textbook and Technology Program nondiscrimination requirement.

102.    On March 5, 2018, MSDE asked Bethel how its statement on marriage and biological sex was consistent with Bethel's assurance that Bethel does not discriminate in student admissions based on sexual orientation.

103.    On March 13, 2018, Bethel sent a letter to MSDE explaining that Bethel does not consider sexual orientation in student admissions, that Bethel forbids all admitted students from engaging in any sexual conduct, and that Bethel's statement on marriage and biological sex is consistent with the BOOST Program's nondiscrimination requirements. *See* Ex. 3.

104.    On May 2, 2018, Bethel sent a written statement to the BOOST Advisory Board, explaining that Bethel does not discriminate in student admissions based on sexual orientation. *See* Ex. 4.

105.    On May 3, 2018, the BOOST Advisory Board met and discussed Bethel's eligibility for BOOST.

106.    At the May 3 meeting, Defendant Gallagher did not display appropriate neutrality as a decision-maker.

107.    At the May 3 meeting, Defendant Gallagher responded to a board member's statement that the BOOST schools "already had a substantial impact by it being in year two that we sort of realized the issue," by sneering: "You mean caught up with the fact that they signed an assurance illegally?"

108.    At the May 3 meeting, in response to a discussion on how to interpret BOOST schools' policy language, Defendant Gallagher laughed as he stated that he did not "think the burden should be on the Board.  I mean, I think, you know, you're either not discriminating or you're leaving the door open to discriminating."

109.    At the May 3 meeting, when a Board member mentioned that the BOOST language states that BOOST schools cannot be required to change their religiously-motivated policies, Defendant Gallagher refused to address that aspect of the law and said he "really tried to limit, you know, my perspective to the actual handbook language[.]"

110.    At the May 3 meeting, Defendant Gallagher stated, in reference to Bethel:

And in the  in the Bethel example, you know, Bethel Christian Academy supports the biblical view of marriage defined as a covenant between one man and one woman and that God immutably bestows gender upon each person at birth as male or female to reflect his image.  And then here's where it becomes problematic: Therefore, faculty, staff, and students conduct is expected to align with this view. Faculty, staff, and students are required to identify with, dress in accordance with, and use the facilities associated with their biological gender.  And, you know, without going too far in terms of scenarios, you know, a person who identifies as a different orientation from their birth, that language affords them the opportunity to discriminate.

111.    At the May 3 meeting, Defendant Gallagher suggested that Bethel's policy on biological sex violated the sexual orientation nondiscrimination-in-admissions requirement.

112.    At the May 3 meeting, Defendant Gallagher thus treated the sexual orientation nondiscrimination requirement as encompassing gender identity.

113.    At the May 3 meeting, the BOOST Advisory Board decided to ask Bethel for more information.

114.    On May 3, 2018, Monica Kearns, an MSDE representative, emailed Bethel to indicate that the Board would be requesting more information from Bethel.

115.    On May 4, 2018, Monica Kearns informed Bethel that the BOOST Advisory Board probably would not determine Bethel's eligibility for BOOST before the May 21, 2018, BOOST application deadline.

116.    On May 4, 2018, MSDE informed Bethel that MSDE had should not have sent the February Textbook and Technology Program letter, because MSDE was still considering whether Bethel's handbook language was acceptable for the BOOST requirements, and that the pending BOOST decision would determine whether Bethel was eligible for the Textbook and Technology Program.

117.    On May 25, 2018, MSDE sent Bethel a letter asking the following questions: "1) Does your school discriminate in student admissions on the basis of sexual orientation? 2) If your school was to discover that one of its students was in violation of the school's religious or moral teachings concerning sexual orientation, what would the school do to address it?"

118.    On May 29, 2018, Bethel sent MSDE a letter responding to MSDE's questions, and attaching previous statements to MSDE which also explained that Bethel does not discriminate in student admissions based on sexual orientation.  *See* Ex. 5.

14

119.     Bethel's May 29 letter provided in part: "Any student who can meet our academic standards and is likely to thrive in our structured environment is welcome to join our school community regardless of religious beliefs, experience of same-sex attraction, sexual self-identification, past participation in same-sex behavior, beliefs about marriage, or beliefs about sexual morality." *See* Ex. 5.

120.     On June 4, 2018, the BOOST Advisory Board met and decided to address Bethel's eligibility at its next meeting.

121.     On June 21, 2018, the BOOST Advisory Board met and decided that Bethel was not eligible for BOOST.

122.     The BOOST Advisory Board went into closed session to discuss Bethel's eligibility for BOOST.

123.     The BOOST Advisory Board did not give a reason for going into closed session as required by the Maryland Open Meetings Act for closing the meeting.

124.     The Open Meetings Act, according to state guidance (FAQ), requires:

The presiding officer must also prepare a written statement, or "closing statement," that cites the part of the Act that contains the applicable exception, lists the topics to be discussed in the closed session, and gives the public body's reason for excluding the public. A member of the public in attendance may object to the decision and inspect the closing statement.

125.     Defendant Gallagher suggested that the Board was going into the closed session to receive legal advice, but did not identify the relevant section of the Open Meetings Act.

126.     On information and belief, Defendant Gallagher did not prepare a written closing statement as required by the Open Meetings Act and described above.

127.     Before the Board went into closed session, Defendant Gallagher noted that the Board had not gone into closed session for three years.

128.   The BOOST Advisory Board did not do any deliberating about Bethel's eligibility for BOOST in any open session.

129.   The BOOST Advisory Board returned from closed session and promptly voted to exclude Bethel from the BOOST Program.

130.   The BOOST Advisory Board did not explain why it was voting to exclude Bethel from the BOOST Program at its June 21 meeting.

131.   The BOOST Advisory Board also voted to deem Broadfording Christian Academy and Grace Academy eligible for BOOST at its June 21 meeting.

132.   The BOOST Advisory Board voted to deem Woodstream Christian Academy ineligible for BOOST at its June 21 meeting.

133.   Upon information and belief, Bethel, Broadfording Christian Academy, Grace Academy, and Woodstream Christian Academy have similar beliefs and policies on marriage and sexual conduct.

134.   On August 8, 2018, Defendant Gallagher sent Bethel a letter informing the school that at its June 21, 2018 meeting, the Board found that Bethel's statement on marriage and biological sex violated the BOOST nondiscrimination requirements. *See* Ex. 6.

135.   Defendant Gallagher's August 8, 2018 letter did not discuss repayment of BOOST funds.

136.   Four months later, on December 12, 2018, MSDE sent Bethel another letter, demanding repayment of $102,600 in past BOOST funds for the years Bethel participated in the BOOST Program. *See* Ex. 7.

137.   In the December 12 letter, MSDE notified Bethel that it was disqualified from BOOST for the 2018-2019 and 2019-2020 academic years.

138.     Upon information and belief, the sole reason MSDE and the BOOST Advisory Board disqualified Bethel was the school's statement on marriage and biological sex, neither of which constitute discrimination on the basis of sexual orientation in admissions.

139.     Bethel has not, and will not, deny an applicant school admission based on the sexual orientation of the applicant.

140.     On February 28, 2019, MSDE sent Bethel a letter notifying it, among other things, that Bethel could regain its eligibility for the BOOST Program by revising the language in its student handbook.

141.     On May 24, 2019, MSDE sent Bethel a document containing examples of how various religious schools revised their handbook language to retain BOOST eligibility. *See* Ex 8.

142.     Bethel would be in serious financial constraints if forced to pay $102,600 to MSDE.

143.     Many parents of students who benefit from BOOST scholarships, and who learned in August 2018 that Bethel was disqualified from the BOOST Program, were left scrambling to find alternate financial aid to keep their children at Bethel, or an alternate school choice.

144.     Bethel attempted to provide additional scholarship funding to students who were detrimentally impacted by the State withdrawing BOOST funding from Bethel, but even that additional funding was insufficient to fully cover the gap left by the loss of BOOST scholarships.

145.     Upon information and belief, at least six Bethel students were forced to leave Bethel due to lack of BOOST funding.

146.     Upon information and belief, at least two prospective students desired to attend Bethel, but could not do so because the State declared Bethel ineligible to receive BOOST funding.

**Bethel Desires to Participate in MSDE's Programs for Nonpublic Schools**

147.    Because MSDE disqualified Bethel from participating in BOOST, MSDE also disqualified Bethel from the Textbooks and Technology and Aging Schools Programs for the 2018-2019 academic year.

148.    But for MSDE interpreting Bethel's statement on marriage and biological sex to constitute sexual orientation discrimination in admissions, Bethel would have been eligible to participate in BOOST, the Textbooks and Technology, and Aging Schools Programs during the 2018-2019 academic year.

149.    Bethel desires to participate in all three nonpublic school programs in the future, including the 2019-2020 academic year.

150.    On March 26, 2019, the Maryland legislature passed House Bill 100, and it was enacted into law on May 13, 2019.

151.    House Bill 100 establishes new, expanded nondiscrimination requirements for the BOOST Program and Textbooks and Technology Program for the 2019-2020 academic year:

> [A]ll participating schools must agree that they will not discriminate in student admissions, retention, or expulsion or otherwise discriminate against any student on the basis of…sexual orientation, or gender identity or expression.

152.    However, the Program requirements go on to say: "Nothing herein shall require any school or institution to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings."

153.    The new gender identity nondiscrimination provision affects not only school admissions, but also student retention, expulsion, or anything else the State deems "otherwise discriminat[ing]."

154.    The new gender identity nondiscrimination provision expands the categories that BOOST schools may not consider to include "gender identity or expression," though it does not define these terms.

155.    Bethel expects students to align their conduct with Bethel's belief that biological sex as either male or female is an immutable gift from God, and therefore identify with, dress in accordance with, conduct themselves consistently with, and use the facilities provided for their biological sex.

156.    The State has not currently defined the gender identity nondiscrimination provision nor what is required for it to be satisfied.

157.    Aside from the gender identity nondiscrimination provision, Bethel meets all other eligibility requirements for reinstatement in the Textbook and Technology Program, as it:

    a.  Is registered with the State Board of Education,

    b.  Does not charge more tuition to a participating student than the statewide average,

    c.  Complies with Title VI of the Civil Rights Act of 1964 as amended,

    d.  Has submitted its student handbook to MSDE for review, and

    e.  Certifies compliance with Title 20 Subtitle 6 of the State Government Article.

158.    Aside from the gender identity nondiscrimination provision, Bethel meets the eligibility requirements for reinstatement in BOOST, as Bethel:

    a.  Complies with Title VI of the Civil Rights Act of 1964 as amended,

    b.  Certifies compliance with Title 20 Subtitle 6 of the State Government Article

    c.  Administers national standardized assessments, and

    d.  Provides more than only pre-kindergarten and kindergarten programs.

159.     Because Bethel was wrongfully excluded from the Textbooks and Technology Program for the 2018-2019 school year, that BOOST requirement should be waived.

160.     Finally, eligibility to participate in Aging Schools is dependent upon the school participating in the Textbook and Technology Program during the 2018-2019 academic year.

161.     Because Bethel was wrongfully excluded from the Textbooks and Technology Program for the 2018-2019 school year, that requirement for participation in the Aging Schools Program should be waived.

## ALLEGATIONS OF LAW

162.     All acts of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color and pretense of state law.

### First Cause of Action: Violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution

163.     Bethel realleges each allegation in ¶¶ 1-162 of this Complaint and incorporates them herein.

164.     The BOOST sexual orientation and gender identity nondiscrimination requirements, as applied, violate Bethel's right to free exercise of religion, under the First Amendment to the United States Constitution.

165.     Bethel's sincerely held religious beliefs include beliefs that there are two immutable and complementary sexes; that marriage is the consensual, lifelong, exclusive union of one man and one woman; and that sexual relations must be reserved for marriage.

166.     Bethel's religious beliefs and related practices are based on Holy Scripture and the teachings of the Assemblies of God.

167.    Bethel's religious beliefs and related practices are summarized in its 2017-2018 Parent/Student Handbook.

168.    Bethel expects its students to align their conduct with Bethel's belief that biological sex as either male or female is an immutable gift from God, and therefore identify with, dress and conduct themselves in accordance with, and use the facilities provided for, their biological sex.

169.    Any communication of a sexual nature, or any behavior that is in violation of the school's statement of faith, will be considered grounds for disciplinary action.

170.    Bethel's continued compliance with its religious beliefs in its admissions and student conduct policies is religious exercise under the First Amendment.

171.    The First Amendment protects Bethel's right to freely exercise its religion.

172.    The First Amendment protects Bethel from government hostility, targeting, and discrimination because of its religious beliefs and practices.

173.    At all times relevant to this Complaint, Bethel met and fully complied with all of the State's eligibility requirements to participate in the 2016-2017 and 2017-2018 BOOST scholarship program.

174.    The BOOST nondiscrimination requirements—at all times relevant to this Complaint—did not and does not include a requirement that participating schools adopt certain written policies.

175.    The BOOST nondiscrimination requirements do include a requirement that participating schools cannot be forced to adopt policies in violation of their religious or moral convictions.

176.     Defendants, in the course of their enforcement activities, treated the BOOST sexual orientation nondiscrimination requirement as requiring certain written policies from participating schools.

177.     Upon information and belief, Defendants, in the course of their enforcement activities, deemed it irrelevant whether participating schools had actually denied admission to an applicant because of his or her sexual orientation.

178.     The Defendants excluded Bethel from the BOOST program despite Bethel's truthful assurance that it does not discriminate in admissions based on sexual orientation, and its numerous explanations of how its policies did not discriminate against applicants based on sexual orientation.

179.     The Defendants excluded Bethel from the BOOST program without evidence or even allegations that Bethel engaged in sexual orientation discrimination in student admissions.

180.     The Defendants excluded Bethel from the BOOST Program without giving Bethel access to the deliberations in the June 21, 2018, meeting that led to Defendants' determination.

181.     The Defendants excluded Bethel from the BOOST Program without clarifying how they were interpreting the sexual orientation nondiscrimination requirement and how that was balanced by the religious policy protection.

182.     The Defendants excluded Bethel from the BOOST Program due to Bethel's statement on marriage, biological sex, and sexual conduct.

183.     On information and belief, Defendants excluded Bethel from the BOOST Program due to Bethel's ban on sexual conduct for students, even though Bethel students cannot legally consent to sexual conduct.

184.    Upon information and belief, Defendants excluded Bethel from the BOOST Program on the theory that Bethel's sexual conduct standards for admitted students discriminated *in admissions* based on sexual orientation, even though Bethel forbids all admitted students, regardless of sexual orientation, from engaging in sexual conduct.

185.    On information and belief, Defendants excluded Bethel from the BOOST program due to Bethel's policies on biological basis of the distinction between the sexes, even though the 2017-2018 BOOST nondiscrimination requirement did not address sex or gender identity.

186.    On information and belief, Defendants excluded Bethel from the BOOST Program without considering the BOOST budget language establishing that schools cannot be forced to adopt policies at odds with their religious or moral teachings.

187.    The Defendants' enforcement of the BOOST nondiscrimination requirement targets, shows hostility toward, and discriminates against religious schools.

188.    The Defendants' enforcement of the BOOST nondiscrimination requirement targets, shows hostility toward, and discriminates against Bethel because of its religious beliefs and practices.

189.    The Defendants' statements disparaging Bethel's religious beliefs regarding marriage and biological sex show hostility toward, and discriminate against Bethel because of its religious beliefs and practices.

190.    Government targeting of or hostility toward religious beliefs is subject to strict scrutiny.

191.    The BOOST nondiscrimination requirements are not a neutral or generally applicable law.

192.    The BOOST sexual orientation nondiscrimination requirement, as applied, substantially burdens Bethel's free exercise rights.

193.    The BOOST gender identity nondiscrimination requirement, as applied, substantially burdens Bethel's free exercise rights.

194.    Because the BOOST nondiscrimination requirements substantially burden Bethel's religious exercise, they must further a compelling government interest in a narrowly tailored way.

195.    The Defendants have no compelling interest that is served by infringing Bethel's religious exercise rights, nor can any such interest be achieved by the least restrictive means available.

196.    Thus, the BOOST nondiscrimination requirements, as applied, violate Bethel's right to free exercise of religion under the First Amendment to the United States Constitution as incorporated and applied to the States through the Fourteenth Amendment.

WHEREFORE, Bethel respectfully requests that the Court grant the equitable and legal relief set forth in the prayer for relief.

### Second Cause of Action: Violation of the Free Speech Clause of the First Amendment to the U.S. Constitution

197.    Bethel realleges each allegation in ¶¶ 1-196 of this Complaint and incorporates them herein.

198.    Defendants' actions requiring Bethel to change its student handbook language in order to be eligible for BOOST funding violates the Free Speech Clause of the First Amendment to the United States Constitution.

199.    The BOOST sexual orientation and gender identity nondiscrimination requirements, as applied unconstitutionally abridge Bethel's free speech because they: 1) discriminate against Bethel's constitutionally-protected speech based on its viewpoint, and 2)

discriminate against Bethel's constitutionally-protected speech based on its content, and 3) condition receipt of funding on Bethel surrendering its freedom of speech.

200.    Religious speech is fully protected by the First Amendment.

201.    Bethel engages in religious speech as it carries out its faith-based educational mission.

202.    Bethel's religious speech includes the publication of its 2017-2018 Parent/Student Handbook.

203.    Bethel's 2017-2018 Parent/Student Handbook summarizes Bethel's religious beliefs and related practices, including its belief that marriage is the life-long covenant union of one man and one woman, and the belief that biological sex is an immutable gift from God.

**The BOOST Nondiscrimination Requirements are Viewpoint-Based**

204.    The BOOST nondiscrimination requirements target particular views taken by speakers on a subject.

205.    The BOOST sexual orientation nondiscrimination requirement targets the view that marriage is the union of a man and a woman.

206.    The BOOST gender identity nondiscrimination requirement targets the view that there are two immutable and complementary sexes.

207.    The BOOST nondiscrimination requirements permit schools to have statements that promote or condone same-sex marriage or a gender identity at variance with one's biological sex.

208.    The BOOST nondiscrimination requirements permit schools to have statements that do not address same-sex marriage or gender identity.

209.   But the BOOST nondiscrimination requirements punish Bethel for stating in its handbook its belief that marriage is the consensual, lifelong, exclusive union of one man and one woman and that biological sex is immutable.

210.   Defendant's preference for certain statements that favor one viewpoint on marriage and gender identity, punishing other viewpoints about marriage and gender identity, discriminates against speech based on viewpoint.

211.   Viewpoint-based speech restrictions are presumptively unconstitutional and subject to strict scrutiny.

**The BOOST Nondiscrimination Requirements are Content-Based**

212.   The BOOST nondiscrimination requirements, as applied, discriminate against Bethel's speech based on the idea or message expressed.

213.   The BOOST sexual orientation nondiscrimination requirement, as applied, discriminates against Bethel's message, as published in Bethel's 2017-2018 Parent/Student Handbook, that it believes marriage is the union of a man and a woman.

214.   The BOOST gender identity nondiscrimination requirement, as applied, discriminates against Bethel's message, as published in Bethel's 2017-2018 Parent/Student Handbook, that it believes there are two immutable and complementary sexes

215.   The BOOST nondiscrimination requirements, as applied, cannot be justified without reference to the content of Bethel's speech.

216.   Defendants disqualified Bethel from the BOOST program because the Defendants disagree with the message Bethel's speech conveys.

217.   Defendants have stated that Bethel could regain BOOST eligibility by altering the content of Bethel's handbook.

218.    As such, the BOOST nondiscrimination requirements, as applied, are subject to strict scrutiny.

**The BOOST Nondiscrimination Requirements Impose an Unconstitutional Condition**

219.    The First Amendment's Free Speech Clause prohibits the government from conditioning a benefit on the relinquishment of the right to freedom of speech.

220.    The BOOST nondiscrimination requirements impose a viewpoint and content-based litmus test on the ability of schools to participate in the BOOST program.

221.    The BOOST nondiscrimination requirements condition Bethel's ability to participate in the BOOST Program and receive BOOST funding on Bethel changing the language in its handbook about its religious beliefs.

222.    Bethel has the First Amendment right to choose the content of its expression, the messages it desires to promote, and the viewpoints it wants to express, and to exercise its religion by communicating messages consistent with its religious beliefs.

**The BOOST Nondiscrimination Requirements Fail Strict Scrutiny**

223.    Because the BOOST nondiscrimination requirement discriminates against Bethel's speech based on its viewpoint and content, and imposes an unconstitutional condition on the surrender of constitutional rights, the nondiscrimination provision must further a compelling interest in a narrowly tailored way.

224.    The Defendants have no compelling interest that is served by infringing Bethel's free speech rights, nor can any such interest be achieved by the least restrictive means available.

225.    Thus, the BOOST nondiscrimination requirement, as applied, violates Bethel's right to free speech under the First Amendment to the United States Constitution as incorporated and applied to the States through the Fourteenth Amendment.

WHEREFORE, Bethel respectfully requests that the Court grant the equitable and legal relief set forth in the prayer for relief.

### Third Cause of Action: Violation of the Due Process Clause
### of the Fourteenth Amendment to the U.S. Constitution
### (*Void for Vagueness*)

226.    Bethel realleges each allegation in ¶¶ 1-225 of this Complaint and incorporates them herein.

227.    The Fourteenth Amendment to the United States Constitution guarantees Bethel the right to due process of law.

228.    The Fourteenth Amendment prohibits Defendants from enforcing laws based on vague standards.

229.    Laws that interfere with First Amendment freedoms require a high level of specificity.

230.    Schools participating in the BOOST Program for the 2016-2017 and 2017-2018 academic years were required to agree to not discriminate in student admissions based on sexual orientation, among other categories.

231.    However, the BOOST sexual orientation nondiscrimination requirement does not "require any school or institution to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings."

232.    The BOOST sexual orientation nondiscrimination requirement does not define sexual orientation or discrimination.

233.    Bethel has not, and will not, deny an applicant school admission based on the sexual orientation of the applicant.

234.    Bethel repeatedly communicated to the BOOST Advisory Board and MSDE officials that it does not discriminate in student admissions based on sexual orientation.

235.    For example, in its May 29, 2018, letter to MSDE, Bethel stated: "Any student who can meet our academic standards and is likely to thrive in our structured environment is welcome to join our school community regardless of religious beliefs, experience of same-sex attraction, sexual self-identification, past participation in same-sex behavior, beliefs about marriage, or beliefs about sexual morality." *See* Ex. 5.

236.    But despite Bethel's truthful assurances, the BOOST Advisory Board determined that Bethel violated the sexual orientation nondiscrimination requirement.

237.    Upon information and belief, MSDE and the BOOST Advisory Board did not disqualify Bethel based on any allegation that Bethel had denied an applicant admission based on the sexual orientation of the applicant.

238.    Upon information and belief, the sole reason MSDE and the BOOST Advisory Board disqualified Bethel from the BOOST program was the school's statement of religious belief on marriage and biological sex.

239.    Further, MSDE informed Bethel that it could regain its eligibility for the BOOST Program by revising the language in its student handbook.

240.    MSDE subsequently sent Bethel two documents containing examples of how various religious schools revised their handbook language to retain BOOST eligibility. *See* Ex. 8.

241.    The MSDE and BOOST Advisory Board disqualified Bethel based on vague, subjective, and malleable standards that differed from the program budget language.

242.    The BOOST sexual orientation nondiscrimination requirement, as applied, provided no warning or notice that something beyond sexual orientation discrimination in admissions was prohibited.

243.    The BOOST gender identity nondiscrimination requirement is also vague.

244.    The BOOST gender identity nondiscrimination requirement requires nonpublic schools to agree not to discriminate in student admissions, retention, or expulsion, "or otherwise discriminate against any student" based on "gender identity or expression," among other categories.

245.    The State has not defined the gender identity nondiscrimination provision nor what is required for it to be satisfied.

246.    It is impossible to know what a person's gender identity or expression may be, or how it applies.

247.    It is unclear whether the State interprets the gender identity nondiscrimination provision to impose affirmative obligations on nonpublic schools.

248.    Bethel does require all its students, faculty, and staff to conform their conduct to its belief that biological sex is an immutable gift from God.

249.    Bethel does require students to use the facilities set aside for their biological sex.

250.    Bethel does require students to adhere to the dress code for their grade and biological sex.

251.    Bethel cannot know whether its faith-based policies violate the BOOST gender identity nondiscrimination requirement.

252.    The BOOST nondiscrimination requirements are thus vague as applied to Bethel and accordingly violate the Fourteenth Amendment's Due Process Clause.

WHEREFORE, Bethel respectfully requests that the Court grant the equitable and legal relief set forth in the prayer for relief.

### Fourth Cause of Action: Violation of the Due Process Clause
### of the Fourteenth Amendment to the U.S. Constitution
### (*Parental Rights*)

253.    Bethel realleges each allegation in ¶¶ 1-252 of this Complaint and incorporates them herein.

254.     Religious schools are protected by the Due Process Clause of the Fourteenth Amendment from the government's unwarranted interference with the rights of parents, and the rights of the school selected by parents, to direct the upbringing and education of the parents' children.

255.     The BOOST sexual orientation and gender identity nondiscrimination requirements as applied, deprive the students' parents of fair opportunity to procure for their children instruction consistent with their sincerely held religious beliefs concerning biological sex, marriage, and human sexuality and that they have selected, at least in part, for religious reasons.

256.     The Fourteenth Amendment protects Bethel from deprivation of its property rights without due process of law.

257.     The right to conduct schools and education in a certain manner is a due process right under *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).

258.     Parents and guardians, as a part of their liberty, may direct the education of their children by selecting schools that are Christian and affirm religious teachings on biological sex, marriage, and human sexuality.

259.     The BOOST nondiscrimination requirements, as applied, infringe on the rights of Bethel to conduct its school in a distinctly religious manner consistent with its Christian beliefs.

260.     Defendants' enforcement of the BOOST nondiscrimination requirements infringes on the rights of parents to choose religious schools where their children will receive a distinctly Christian education.

261.     Defendants' enforcement of the BOOST nondiscrimination requirement results in parents being forced to choose between a government benefit, and choosing a religious school that upholds their beliefs regarding marriage and human sexuality.

262.     The BOOST nondiscrimination requirement, as applied, therefore violates the Fourteenth Amendment.

WHEREFORE, Bethel respectfully requests that the Court grant the equitable and legal relief set forth in the prayer for relief.

**Fifth Cause of Action: Violation of the Equal Protection Clause
of the Fourteenth Amendment to the U.S. Constitution**

263.     Bethel realleges each allegation in ¶¶ 1-262 of this Complaint and incorporates them herein.

264.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution protects the right of similarly-situated entities to be treated similarly under the law.

265.     The BOOST sexual orientation nondiscrimination requirement, as applied, unconstitutionally abridges Bethel's right to equal protection of the law.

266.     The BOOST sexual orientation nondiscrimination requirement, as applied, treats Bethel differently from similarly-situated nonpublic religious schools on the basis of the religious content and expression in their student handbooks.

267.     The BOOST Advisory Board voted to deem Bethel ineligible for BOOST at its June 21, 2018, meeting.

268.     Upon information and belief, the sole reason MSDE and the BOOST Advisory Board disqualified Bethel from BOOST was the school's statement on marriage and biological sex, neither of which constitute discrimination on the basis of sexual orientation in admissions.

269.     Bethel believes that marriage is the union of one man and one woman, and that sexual conduct is to be reserved to such a union.

270.     Bethel prohibits all students from engaging in any sexual conduct or communication.

271.    Bethel has not, and will not, deny an applicant school admission based on the sexual orientation of the applicant.

272.    MSDE allowed other religious schools with religious beliefs and conduct policies similar to Bethel's to remain eligible for BOOST.

273.    For example, at the same June 21, 2018 meeting, the BOOST Advisory Board also voted to deem Broadfording Christian Academy and Grace Academy eligible for BOOST.

274.    Upon information and belief, Broadfording Christian Academy and Grace Academy have similar beliefs and policies on marriage and sexual conduct to Bethel.

275.    Upon information and belief, Broadfording Christian Academy and Grace Academy both affirm the belief that marriage is the union of one man and one woman.

276.    Upon information and belief, Broadfording Christian Academy and Grace Academy both affirm that sexual conduct is to be reserved to such a union.

277.    Upon information and belief, both Broadfording Christian Academy and Grace Academy have policies which state that they reserve the right to deny admission to an applicant engaged in sexual immorality.

278.    Upon information and belief, the BOOST advisory board treated Bethel less favorably than other religious schools that have similar beliefs and policies, such as Broadfording Christian Academy and Grace Academy, based solely on the statement of Bethel's religious beliefs in its student handbook.

279.    Defendants' enforcement of the BOOST nondiscrimination requirement treats Bethel less favorably than other religious schools that have similar beliefs and policies on marriage and sexual conduct.

280.    Defendants' enforcement of the BOOST nondiscrimination requirement amounts to unbridled discretion.

281.    Defendants' enforcement of the BOOST nondiscrimination requirement is ad hoc and lacks objective standards.

282.    Defendants' enforcement of the BOOST nondiscrimination requirement is irrational and unreasonable, and imposes irrational and unjustifiable restrictions on First Amendment rights.

283.    Defendants' enforcement of the BOOST nondiscrimination requirement does not serve a significant government interest.

284.    Defendants' enforcement of the BOOST nondiscrimination requirement is not supported by a compelling governmental interest.

285.    Defendants' enforcement of the BOOST nondiscrimination requirement is not the least restrictive means to accomplish any permissible government interest sought to be served by the requirement.

WHEREFORE, Bethel respectfully requests that the Court grant the equitable and legal relief set forth in the prayer for relief.

### Sixth Cause of Action: Violation of the Establishment Clause of the First Amendment to the U.S. Constitution

286.    Bethel realleges each allegation in ¶¶ 1-285 of this Complaint and incorporates them herein.

287.    The First Amendment to the United States Constitution, as applied to the States via the Fourteenth Amendment, prohibits States from excessively entangling themselves with religion.

288.    On information and beliefs, Defendants, in the course of their enforcement activities, demanded that numerous religious schools submit their handbooks for Defendants' review.

289.    On information and belief, Defendants, in the course of their enforcement activities, conducted an extensive review of numerous religious schools' religious beliefs and related policies.

290.    Defendants, in the course of their enforcement activities, demanded that Bethel submit its handbook for Defendants' review of Bethel's religious beliefs and related policies.

291.    Defendants, in the course of their enforcement activities, refused to accept Bethel's assurance that it did not discriminate in student admissions based on sexual orientation, and its numerous explanations of how its policies did not discriminate against students based on sexual orientation.

292.    Upon information and belief, Defendants received no complaints about Bethel violating the nondiscrimination in admissions requirement.

293.    Upon information and belief, Defendants' sole basis for finding Bethel noncompliant was the school's statement in its 2017-2018 Parent/Student handbook regarding Bethel's beliefs about marriage and biological sex.

294.    Upon information and belief, Defendants took it upon themselves to interpret Bethel's religious beliefs about marriage and biological sex.

295.    Upon information and belief, Defendants determined that Bethel's religious beliefs about marriage and biological sex constituted discrimination based on sexual orientation in student admissions.

296.    Upon information and belief, Defendants substituted their own interpretation of Bethel's religious beliefs and ignored Bethel's repeated assurance that it did not discriminate against students in admissions based on sexual orientation.

297.    Defendants excessively entangled themselves with religion in violation of the First Amendment's Establishment Clause.

WHEREFORE, Bethel respectfully requests that the Court grant the equitable and legal relief set forth in the prayer for relief.

## **PRAYER FOR RELIEF**

Bethel Ministries, Inc. prays for judgment as follows:

A.     That this Court issue a Preliminary and Permanent Injunction to enjoin the Defendants, Defendants' officers, agents, and employees, and all other persons acting in active concert with them, from enforcing the BOOST, Textbook and Technology, and Aging Schools nondiscrimination requirements to:

> (1)   Prohibit Bethel from being eligible for funding from the BOOST, Textbook and Technology, and Aging Schools Programs due to its religious beliefs;

> (2)   Force Bethel to pay back the previous funding it received from the BOOST Program;

> (3)   Discriminatorily target Bethel in enforcing the BOOST, Textbook and Technology, and Aging Schools Program nondiscrimination requirements;

B.     That this Court render a Declaratory Judgment declaring that Defendants' sexual orientation and gender identity nondiscrimination requirements are unconstitutional as applied to Bethel, and that Defendants' eligibility determination and repayment demand violate the First and Fourteenth Amendments to the United States Constitution;

C.     That this Court issue the requested injunctive relief without a condition of bond or other security being required of Bethel;

D.     That this Court award Bethel's costs and expenses, including its attorneys' fees, pursuant to 42. U.S.C. § 1988; and

E.     For such other relief as the Court deems just and equitable.

Dated this 24th day of June, 2019.

Respectfully submitted,

*/s/ John R. Garza*

John R. Garza
GARZA LAW FIRM, P.A.
17 W. Jefferson Street
Rockville, MD 20850
Telephone: (301) 340-8200
Fax: (301) 761-4309
Email: jgarza@garzanet.com

David C. Cortman*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road, Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Fax: (770) 339-6744
Email: DCortman@ADFlegal.org

Christiana M. Holcomb*
Christen M. Price*
Gregory S. Baylor**
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
Email: CHolcomb@ADFlegal.org
Email: CPrice@ADFlegal.org
Email: GBaylor@ADFlegal.org

*Counsel for Plaintiffs*

*\*Pro Hac Vice Motions filed
contemporaneously herewith*

*\*\*Pro Hac Vice Motion to be filed
subsequently*

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and the factual allegations thereof and that to the best of my knowledge the facts alleged therein are true and correct.

Executed this  23rd  day of June, 2019.

Johnny Green, D.B.S.
Senior Pastor,
Bethel Ministries, Inc.