**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| BETHEL MINISTRIES, INC., | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:19-cv-01853-ELH |
| DR. KAREN B. SALMON, et al. | ) | |
| | ) | |
| | ) | **Oral argument requested** |
| *Defendants*. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 4

STANDARD OF REVIEW ................................................................................................ 11

ARGUMENT .................................................................................................................... 11

   I.   As a Church, Bethel has standing to raise a Free Exercise claim. ..................................... 11

   II.   Bethel pled a Free Exercise claim under *Lukumi, Masterpiece,* and *Trinity Lutheran*. .... 12

     A. The BOOST nondiscrimination provision, as applied, shows religious targeting under
     *Lukumi*.................................................................................................................. 13

     B. The BOOST nondiscrimination provision, as applied, shows hostility towards Bethel's
     beliefs under *Masterpiece*. ..................................................................................... 15

     C. The BOOST nondiscrimination provision, as applied, expressly discriminates against
     Bethel's religious beliefs under *Trinity Lutheran*.......................................................... 18

     D. The Board cannot satisfy strict scrutiny.................................................................. 20

   III.   Bethel pled an Establishment Clause claim, with or without the *Lemon* test. ............... 22

   IV.   Bethel pled a Free Speech claim because the BOOST nondiscrimination provision
   regulates protected speech, not just conduct. ........................................................... 23

   V.   Bethel pled Fourteenth Amendment claims because it has a property interest in BOOST,
   the program terms are vague, the Board's actions fail scrutiny, and parents have a right to
   choose a faith-based education for their children..................................................... 26

     A. Bethel pled a property interest in the $102,600 clawback. ............................................. 26

     B. The BOOST program terms are vague. ...................................................................... 27

     C. The Board's decision to exclude Bethel while allowing similarly-situated schools to
     remain eligible fails scrutiny..................................................................................... 28

     D. Parents have a right to choose a faith-based education for their children. ....................... 28

CONCLUSION.................................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases:**

*Agency for International Development v. Alliance for Open Society International, Inc.*,
  570 U.S. 205 (2013)...........................................................................................................26

*American Legion v. American Humanist Association*,
  139 S. Ct. 2067 (2019).....................................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................11

*Bob Jones University v. United States*,
  461 U.S. 574 (1983)...........................................................................................................23

*Burwell v. Hobby Lobby*,
  573 U.S. 682 (2014)......................................................................................................20, 21

*Capitol Square Review and Advisory Board v. Pinette*,
  515 U.S. 753 (1995)...........................................................................................................24

*Carter v. SNC-Lavalin Constructors, Inc.*,
  2019 WL 918382 (D. Md. Feb. 25, 2019) .......................................................................22

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)...........................................................................11, 13, 15, 19, 21

*City of Cleburne, Texas v. Cleburne Living Center*,
  473 U.S. 432 (1985)...........................................................................................................28

*Community and Labor United for Baltimore Charter Committee v. Baltimore City Board of
  Elections*,
  823 A.2d 804 (Md. 2003) .................................................................................................17

*Committee for Public Education & Religious Liberty v. Nyquist*,
  413 U.S. 756 (1973)......................................................................................................28-29

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006)...........................................................................................................20

*Herrada v. City of Detroit*,
  275 F.3d 553 (6th Cir. 2001) ...........................................................................................26

*Hosanna-Tabor Evangelical Lutheran Church and School v. Equal Employment Opportunity Commission, et al.*,
  565 U.S. 171 (2012)...........................................................................................................23

*Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County, Maryland*,
  915 F.3d 256 (4th Cir. 2019) ............................................................................... 16-17, 28

*Kedroff v. St. Nicholas Cathedral*,
  344 U.S. 94 (1952)..................................................................................................... 22-23

*Kreshik v. St. Nicholas Cathedral*,
  363 U.S. 190 (1960)................................................................................................... 22-23

*Lemon v. Kurtzman*,
  403 U.S. 602 (1971)........................................................................................................22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................................12

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
  138 S. Ct. 1719 (2018)..........................................................................................12, 15, 16

*Matherly v. Andrews*,
  859 F.3d 264 (4th Cir. 2017) ........................................................................................11

*McDaniel v. Paty*,
  435 U.S. 618 (1978)................................................................................... 13, 18-19, 20

*National Association for Advancement of Colored People v. Button*,
  371 U.S. 415 (1963)........................................................................................................24

*Obergefell v. Hodges*,
  135 S. Ct. 2584 (2015) ........................................................................................... 12-13

*Patsy v. Board of Regents*,
  457 U.S. 496 (1982)........................................................................................................18

*Philips v. Pitt County Memorial Hospital*,
  572 F.3d 176 (4th Cir. 2009) ......................................................................................14

*Pierce v. Society of Sisters*,
  268 U.S. 510 (1925)........................................................................................................29

*Presbyterian Church v. Hull Church*,
  393 U.S. 440 (1969)........................................................................................................22

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*,
    450 F.3d 1295 (11th Cir. 2006) ................................................................. 11-12

*Reaching Hearts International, Inc. v. Prince George's County*,
    584 F. Supp. 2d 766 (D. Md. 2008) ................................................................17

*Rosenberger v. Rector & Visitors of University of Virginia*,
    515 U.S. 819 (1995) .........................................................................................25

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ......................................................................................24, 25

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*,
    502 U.S. 105 (1991) .........................................................................................26

*Slade v. Hampton Roads Regional Jail*,
    407 F.3d 243 (4th Cir. 2005) ...........................................................................26

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .........................................................................................24

*Sylvia Development Corp. v. Calvert County, Maryland*,
    48 F.3d 810 (4th Cir. 1995) .............................................................................17

*Telescope Media Group v. Lucero*,
    2019 WL 3979621 (8th Cir. Aug. 23, 2019) ...................................................23

*Texas v. Johnson*,
    491 U.S. 397 (1989) .........................................................................................21

*Trinity Lutheran Church v. Comer*,
    137 S. Ct. 2012 (2017) .......................................................................11, 18, 19

*United States v. Garcia*,
    855 F.3d 615 (4th Cir. 2017) ...........................................................................19

*U.S. ex rel. Oberg v. Pennsylvania Higher Education Assistance Agency*,
    745 F.3d 131 (4th Cir. 2014) ...........................................................................19

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) .........................................................................................29

**Statutes:**

42 U.S.C. § 1983 ...............................................................................................11

Md. Code GP §§  3-401, 3-402 ................................................................................................17

**Federal Rules:**

Federal Rule of Civil Procedure 10(c) ....................................................................................14

**Miscellaneous:**

May 3, 2018, BOOST advisory board meeting audio
http://archives.marylandpublicschools.org/S/Audio/BOOSTMeeting050318.mp3  (last visited
September 12, 2019) ................................................................................................7, 8, 16

*About Us*, Maryland BOOST, https://www.educationmaryland.org/ (last visited September 17,
2019). ...........................................................................................................................19, 21

## INTRODUCTION

Discrimination based on religious belief has no place in government programs. Even in the administration of a gratuitous benefit program, the government may not discriminate based on religious status or beliefs. It must be even-handed and neutral towards religion—including religious beliefs it dislikes. As Plaintiff Bethel Ministries has pled, the BOOST advisory board and Maryland State Department of Education (collectively, "Board" or "Defendants") violated this anti-discrimination principle. And in so doing, the Defendants harmed not just Bethel, but also the low-income families the state voucher program was designed to serve.

The 2017-2018 BOOST voucher program prohibited participating nonpublic schools from discriminating in admissions based on sexual orientation. Defendants claim they excluded Bethel from BOOST because Bethel's admissions policy "states it will punish applicants based on their sexual orientation," or indicates that "students would be disciplined, up to and including expulsion, on the basis of conduct inconsistent with a heterosexual status." Def.'s Mot. to Dismiss pg. 1, 3. But these statements are directly contrary to Bethel's own explanation of its policies and religious beliefs—which, on a motion to dismiss, must be accepted as true.

Two points are important to clarify at the outset:

***First, Bethel has never discriminated based on sexual orientation.*** The Board can point to no sexual orientation discrimination by Bethel—because there is none. Compl. ¶¶ 7, 47, 139; Compl. Ex. 4 at 0072; Compl. Ex. 5 at 0074. As Bethel repeatedly informed the BOOST board, it does not take sexual orientation into consideration in student admissions. Compl. ¶¶ 103-04; 118-19; Compl. Ex. 3 at 0070; Compl. Ex. 4 at 0072; Compl. Ex. 5 at 0074. It does not take sexual orientation into consideration in student discipline. Compl. Ex. 3 at 0070; Compl. Ex. 5 at 0074. And it has never removed or disciplined a student based on "sexual orientation status." *Id.*

***Second, Bethel does not have a policy of discriminating based on sexual orientation and will not discriminate based on sexual orientation***. As Bethel pled—and as must be accepted as true at this point in litigation—all applicants who meet Bethel's academic standards are welcome at Bethel Christian Academy. Compl. ¶¶ 41, 103-04, 118-119; Compl. Ex. 4 at 0072; Compl. Ex. 5 at 0074. Neither students nor their parents need to be professing Christians or even agree with Bethel's religious beliefs to attend. Compl. ¶¶ 43; *see also* Compl. Ex. 1 at 0008; Compl. Ex. 5 at 0074. Nor does it matter whether a student identifies as homosexual, experiences same-sex attraction, or believes marriage can be between two individuals of the same sex. Compl. ¶¶ 118-119; Compl. Ex. 3 at 0070; Compl. Ex. 5 at 0074. All are welcome at Bethel. The fact that Bethel's nondiscrimination statement does not explicitly include sexual orientation—an argument which the Board did not mention in its letters disqualifying Bethel from BOOST, but raises for the first time in its motion to dismiss—no more indicates that Bethel will discriminate based on sexual orientation than the Maryland legislature's failure to include "sex" as a category of nondiscrimination in BOOST means that the legislature condones discrimination against women. *See* Compl. Ex. 2 at 0062 (listing categories of nondiscrimination as "race, color, national origin or sexual orientation"). Bethel considers conduct, not status, in the administration of its conduct policies.

As a church-run school, Bethel is forthright with potential applicants about its religious beliefs. *See* Compl. ¶ 42; Compl. Ex. 4 at 0072. It supports marriage as the union of one man and one woman, and "faculty, staff, and ***student conduct*** is expected to align with this view." Compl. ¶ 51; Compl. Ex. 1 at 0008 (emphasis added). Unremarkably, Bethel's student conduct expectations are later spelled out in its student conduct policy—a more appropriate place than its nondiscrimination policy. Compl. ¶¶ 51-55; Compl. Ex. 1 at 0033-36. Bethel simply requires all

students, who are in preschool through 8th grade, to refrain from engaging in sexual communications or conduct of *any* kind. Compl. ¶¶ 52-53; Compl. Ex. 1 at 0035; Compl. Ex. 3 at 0070; Compl. Ex. 5 at 0074. These conduct expectations apply equally to all students without regard to sexual orientation, sexual attraction, or sexual identification. Compl. ¶¶ 118-19; Compl. Ex. 3 at 0070; Compl. Ex 5 at 0074. Defendants have even admitted that this type of policy "prohibit[ing] certain conduct 'without regard to sexual orientation' would ***not*** violate the nondiscrimination clause." Def's Mot. to Dismiss at 8 (emphasis added); *see also* Compl. Ex. 6 at 0077. And these requirements are unexceptional, given that Bethel serves minor children below the age of consent.[1]

Bethel explained its admissions policies to the Board in not just one or two, but three written statements. Compl. ¶¶ 103-04, 118-19; Compl. Ex. 3 at 0069-0070; Compl Ex. 4 at 0072; Compl. Ex. 5 at 0074. Despite these explanations, the Board concluded that Bethel's admissions policy "states it will punish applicants based on their sexual orientation," Def.'s Mot. to Dismiss pg. 1, and it now demands a $102,600 clawback. In so doing, Defendants have violated Bethel's constitutional rights.

As discussed below, Bethel has standing to raise and has plausibly alleged facts supporting a Free Exercise claim under *Lukumi, Masterpiece,* and *Trinity Lutheran* for religious targeting, religious hostility, and express discrimination based on religious beliefs. Bethel has likewise plausibly pled an Establishment Clause claim, with or without the *Lemon* test, because Defendants substituted their own interpretation of Bethel's religious beliefs for Bethel's explanation of those beliefs. Moreover, the Board's application of the BOOST nondiscrimination provision was not

---

[1] It is unclear from Defendants' briefing exactly what sexual conduct it believes children under the age of consent should be free to engage in during school hours. *See* Def.'s Mot. to Dismiss at 5-6.

just speech incidental to unlawful conduct, but restricted lawful religious speech in a viewpoint and content-discriminatory way without an adequate justification. Finally, Bethel has plausibly pled a property interest in the funds the Board retroactively demands in payback, a violation of due process and parental rights, as well as an equal protection claim. For these reasons, Plaintiff Bethel Ministries respectfully requests that Defendant's motion to dismiss be denied.

## STATEMENT OF FACTS

Bethel Christian Academy, a ministry of Bethel Ministries, has been serving the Baltimore community for over 30 years. Compl. ¶¶ 26, 29.  Bethel's approximately 281 preschool through 8th grade students come from diverse ethnic and socioeconomic backgrounds for a quality, faith-based education at Bethel. Compl. ¶¶ 36-40. As a church-run school, Bethel is unabashedly Christian, and does not hide its religious identity or faith perspective from prospective applicants. Compl. Ex. 1 at 0008. But neither does Bethel require students or parents to agree with its Christian beliefs. *Id.*; Compl. ¶ 43. It simply requires students to be respectful of its beliefs and comply with its conduct policies. Compl. ¶¶ 44-45.

To that end, Bethel included a nondiscrimination statement in its 2017-2018 Parent-Student Handbook:

> Bethel Christian Academy admits students of any race, color, and national or ethnic origin to all the rights, privileges, programs, and activities generally accorded or made available to students at the school. It does not discriminate on the basis of race, color, national and ethnic origin in administration of its educational policies, admissions policies, scholarship and loan programs, and athletic and other school-administered programs.
>
> It should be noted, however, that Bethel Christian Academy supports the biblical view of marriage defined as a covenant between one man and one woman, and that God immutably bestows gender upon each person at birth as male or female to reflect His image. (Gen. 1:27, Gen. 2:23-24) Therefore, faculty, staff, and student conduct is expected to align with this view. Faculty, staff, and students are required to identify with, dress in accordance with, and use the facilities associated with their biological gender.

Compl. ¶ 46; Compl. Ex. 1 at 0008.

Bethel's student conduct expectations are later spelled out in its student conduct policy. Compl. ¶¶ 51-55; Compl. Ex. 1 at 0033-36. All students, who are in preschool through 8th grade, must refrain from engaging in sexual communications or conduct of any kind. Compl. ¶¶ 52-53; Compl. Ex. 1 at 0035; Compl. Ex. 3 at 0070; Compl. Ex. 5 at 0074. These conduct expectations apply equally to all students without regard to sexual orientation, sexual attraction, or sexual identification. Compl. ¶¶ 118-19; Compl. Ex. 3 at 0070; Compl. Ex. 5 at 0074.

Bethel began participating in Maryland's Broadening Options and Opportunities for Students Today (BOOST) voucher program in the 2016-2017 school year to better serve economically vulnerable students. Compl. ¶ 72. The BOOST voucher program allows students from families that qualify for free or reduced-price lunches—approximately 20% of Bethel's student population—to apply for scholarships to help offset the cost of a nonpublic education. Compl. ¶¶ 40, 62.

To be eligible to receive BOOST vouchers, nonpublic schools must meet a variety of eligibility requirements, and agree not to discriminate based on sexual orientation (among other categories) in admissions. Compl. ¶¶ 67-68; Compl. Ex. 2 at 0061-62. For the 2016-2017 and 2017-2018 academic years (the two years Bethel participated), the legislature required that participating BOOST schools:

> not discriminate in student admissions on the basis of race, color, national origin, or sexual orientation. Nothing herein shall require any school or institution to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings. However, all participating schools must agree that they will not discriminate in student admissions on the basis of race, color, national origin, or sexual orientation.

Compl. Ex. 2, H.B. 150 at 0062.[2]

---

[2] This sexual orientation nondiscrimination provision is also in effect for the 2019-2020 school year, although the legislature expanded it to cover additional protected classes (gender identity or expression) and to prohibit additional conduct (student retention and expulsion). Compl. ¶ 151.

Bethel met all the eligibility requirements to receive BOOST vouchers. Compl. ¶ 74. And it truthfully signed the written assurance that it would not discriminate in admissions based on sexual orientation. Compl. ¶ 73. Seventeen Bethel students received BOOST aid during the 2016-2017 academic year, and another eighteen students during the 2017-2018 academic year. Compl. ¶¶ 75-76.

But in the fall of 2017, Defendants at the BOOST advisory board and Maryland State Department of Education (MSDE) began investigating the student handbooks of BOOST schools. Compl. ¶ 92. The Board had not previously conducted any such investigations and, for the past two years, had accepted these schools' assurances of compliance. But the Board requested, and Bethel supplied, a copy of its 2017-2018 student handbook. Compl. ¶¶ 95-96.

In a March 5, 2018, letter, Defendants asked Bethel how its religious statement on marriage and biological sex was consistent with Bethel's assurance that the school does not discriminate in admissions based on sexual orientation. Compl. ¶ 102. Bethel responded on March 13 that it "does not ask any questions about sexual orientation at all during the admissions process and is willing to enroll any student who meets the academic criteria and whose past school conduct has not been demonstrably disruptive in a previous school." Compl. Ex. 3 at 0070; *see also* Compl. ¶ 103. Bethel also explained that admitted students are prohibited from "engaging in sexual behavior of any type, whether heterosexual or homosexual" and reiterated that Bethel's religious beliefs on marriage and biological sex complied with the BOOST nondiscrimination assurance. Compl. Ex. 3 at 0069–70.

On May 2, 2018, Bethel submitted a statement to the BOOST Board reiterating that Bethel complies with the nondiscrimination requirement because (1) the BOOST bill explicitly prohibited the Board from "requir[ing] any school or institution to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings" and because (2) "[a] statement of policy regarding

*student conduct*" is irrelevant to discrimination in admissions. Compl. Ex. 4 at 0072 (emphasis in original); *see also* Compl. ¶ 104.

On May 3, 2018, the BOOST advisory board met and discussed whether Bethel complied with the nondiscrimination requirement. Compl. ¶ 105. At that meeting, Defendant Gallagher made several remarks derisive of Bethel's religious beliefs. One Board member balked at pursuing a clawback against some of the religious schools because the Board had already authorized two years of scholarships before the schools were "caught up" in the Board's new compliance investigation. Defendant Gallagher interjected, sneered, and stated, "You mean caught up with the fact that they signed an assurance illegally?" Compl. ¶ 107.[3] At that same meeting, Gallagher also promoted an *ultra vires* interpretation of the admissions nondiscrimination requirement that reached beyond the law's plain text and ignored the safe harbor against forcing religious schools to adopt policies that conflict with their religious beliefs. Gallagher stated that Bethel's "biblical view of marriage" and gender were "problematic" because it "*affords them the opportunity to discriminate.*" Compl. ¶ 110.[4] He even suggested that Bethel's policy on biological sex violated the sexual orientation nondiscrimination requirement. Compl. ¶¶ 111-12. Gallagher laughed and did not "think the burden [for compliance] should be on the Board. I mean, I think, you know,

---

[3]   *See also* May 3, 2018, BOOST advisory board meeting audio at 13:30-13:37 http://archives.marylandpublicschools.org/S/Audio/BOOSTMeeting050318.mp3 (last visited September 12, 2019).

[4]   *See also* May 3, 2018, BOOST Advisory board meeting audio at 1:14:41-1:15:34 http://archives.marylandpublicschools.org/S/Audio/BOOSTMeeting050318.mp3 (last visited September 12, 2019).

you're either not discriminating or you're *leaving the door open to discriminating.*" Compl. ¶ 108 (emphasis added).[5]

Gallagher also assessed school compliance based on Bethel's religious beliefs, instead of any evidence of discrimination or other data that a student was denied admission based on sexual orientation. He refused to consider any religious protections for school policies and instead "really tried to limit, you know, my perspective to the actual handbook language." Compl. ¶ 109.[6]

At the end of the meeting, the Board decided to ask Bethel for more information. Compl. ¶ 113. On May 25, 2018, MSDE sent Bethel a letter that asked: "1) Does your school discriminate in student admissions on the basis of sexual orientation? 2) If your school was to discover that one of its students was in violation of the school's religious or moral teachings concerning sexual orientation, what would the school do to address it?" Compl. ¶ 117.

Bethel responded on May 29 and attached its previous statements to MSDE. Compl. ¶ 118; Compl. Ex. 5 at 0074. Bethel reiterated that "[a]ny student who can meet our academic standards and is likely to thrive in our structured environment is welcome to join our school community regardless of religious beliefs, experience of same-sex attraction, sexual self-identification, past participation in same-sex behavior, beliefs about marriage, or beliefs about sexual morality." Compl. ¶ 119; Compl. Ex. 5 at 0074. Bethel went on to explain:

> My March letter stated that an admitted student "is expected to comply with behavioral expectations and is subject to disciplinary action for violation of those behavioral standards, including engaging in sexual behavior of any type, whether heterosexual or homosexual." The school behavioral standards address student actions. A student's *private beliefs* about sexual morality and marriage would not

---

[5] *See also* May 3, 2018, BOOST advisory board meeting audio at 1:12:51-1:13:03 http://archives.marylandpublicschools.org/S/Audio/BOOSTMeeting050318.mp3 (last visited September 12, 2019).

[6] *See also* May 3, 2018, BOOST advisory board meeting audio at 1:14:25-1:14-35 http://archives.marylandpublicschools.org/S/Audio/BOOSTMeeting050318.mp3 (last visited September 12, 2019).

> be in violation of BCA's student conduct policy although they may be different
> from BCA's religious or moral teachings about sexual morality.

Compl. Ex. 5 at 0074 (emphasis in original).

But the Board excluded Bethel from BOOST anyway. On June 21, 2018, the BOOST advisory board went into closed session—for the first time in its history—to discuss Bethel's eligibility for BOOST. Compl. ¶¶ 121-122, 127. The Board did not give a reason for going into closed session, nor did it identify the relevant section of the Open Meetings Act that authorized its closed session. Compl. ¶¶ 123-126. After the closed session, the Board emerged and promptly voted to exclude Bethel from BOOST without any explanation or justification. Compl. ¶¶ 128-130. At that meeting, the Board also deemed Broadfording Christian Academy and Grace Academy eligible, and Woodstream Christian Academy ineligible, for BOOST. Compl. ¶¶ 131-32.

Weeks later, on August 8, 2018, Defendant Gallagher sent a letter informing Bethel that its statement on marriage and biological sex violated the BOOST ban on sexual orientation discrimination in admissions. Compl. ¶ 134; Compl. Ex. 6 at 0076. That letter explained that "disciplin[ing] or expel[ling] a student because of the student's sexual orientation" violates the admissions nondiscrimination provision because it "would make acceptance at the school illusory (i.e. a sham admission)." Compl. Ex. 6 at 0077. Gallagher also stated that any "*discipline policy that, on its face, singles out conduct or behavior based on the sexual orientation of the student*" violates the nondiscrimination in admissions provision, but that a discipline policy that is silent as to sexual orientation is compliant. *Id.* (emphasis added). The letter did not point to any admissions or discipline policy at Bethel that singled out conduct or behavior based on the sexual orientation of the student. The letter also said nothing about the possibility of a clawback.

Bethel scrambled to provide its own scholarships to impacted BOOST students. Compl. ¶ 144. But it could not completely compensate for the loss of BOOST vouchers. *Id.* At least six Bethel students were forced to leave Bethel before the 2018–2019 school year due to loss of BOOST funding. Compl. ¶ 145. And at least two new prospective students desired to attend Bethel during the 2018-2019 academic year, but could not due to Bethel's expulsion from BOOST. Compl. ¶ 146.

Months later, on December 12, 2018, MSDE sent Bethel a letter demanding repayment of $102,600 in past BOOST scholarships for the 2016–2017 and 2017–2018 school years. Compl. ¶¶ 136-37; Compl. Ex. 7 at 0079. The letter stated that on June 21, 2018, the Board made a "determination that the Bethel Christian Academy student handbook contained statements that violated the non-discrimination in admission requirement set forth in the BOOST law." Compl. Ex. 7 at 0079.

In a February 28, 2019 letter, MSDE again highlighted Bethel's obligation to repay BOOST funds from prior years, and "offered" to let Bethel regain its eligibility for BOOST by deleting the religious beliefs that MSDE found objectionable from Bethel's student handbook. Compl. ¶ 140. MSDE later provided examples of how other religious schools had edited their student handbooks as the price of continued BOOST eligibility. Compl. ¶ 141; Compl. Ex. 8.

Subsequently, in March 2019, the Maryland legislature amended the BOOST nondiscrimination requirement to state:

> [A]ll participating schools must agree that they will not discriminate in student admissions, retention, or expulsion or otherwise discriminate against any student on the basis of…sexual orientation or gender identity or expression. Nothing herein shall require any school or institution to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings.

Compl. ¶¶ 150-52.

## STANDARD OF REVIEW

On a motion to dismiss, the legal standard is whether Bethel's complaint plausibly states a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts "as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Matherly v. Andrews*, 859 F.3d 264, 274 (4th Cir. 2017). As discussed below, Bethel has plausibly stated claims for relief and should be permitted to prove its claims through discovery.

## ARGUMENT

Bethel has standing to raise and has plausibly alleged facts supporting a Free Exercise claim under *Lukumi, Masterpiece,* and *Trinity Lutheran.* Bethel has likewise plausibly pled an Establishment Clause claim, with or without the *Lemon* test. Moreover, the Board's application of the BOOST nondiscrimination provision was not just speech incidental to unlawful conduct, but restricted speech concerning *lawful* conduct in a viewpoint and content-discriminatory way without an adequate justification. Finally, Bethel has plausibly pled a property interest in the funds the Board retroactively demands in payback, a violation of due process and parental rights, as well as an equal protection claim. For these reasons, Plaintiff Bethel Ministries respectfully requests that Defendants' motion to dismiss be denied.

### I.      As a Church, Bethel has standing to raise a Free Exercise claim.

Bethel does not assert organizational standing on behalf of its members. Rather, as a Church, Bethel asserts its own religious liberty interests under the Free Exercise Clause through a Section 1983 claim. Compl. ¶¶ 15, 21, 26. By its terms, section 1983 provides a cause of action for "person[s]" who have been deprived of "rights…secured by the Constitution." 42 U.S.C. § 1983. Religious corporations like Bethel are "persons" within the meaning of section 1983 whose Free Exercise rights are secured by the First Amendment. *See*, *e.g.*, *Primera Iglesia Bautista*

*Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1306 (11th Cir. 2006) (holding that a religious corporation has standing to bring section 1983 Free Exercise claim).

This principle is unremarkable, as numerous churches have successfully pressed their own Free Exercise claims to the U.S. Supreme Court. *See, e.g., Trinity Lutheran Church v. Comer*, 137 S. Ct. 2012 (2017) (granting church corporation relief in a section 1983 suit to vindicate Free Exercise rights); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 547 (1993) (granting church corporation relief in section 1983 suit to vindicate Free Exercise rights). Bethel alleged that it was injured by being excluded from BOOST and penalized with a $102,600 clawback, Compl. ¶¶ 137, 141 142, which is traceable to the Defendants, *see id*., and can be redressed by this Court, *see* Compl. Prayer for Relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (listing factors for Article III standing). Bethel therefore has standing to press its Free Exercise claim.[7]

## II.   Bethel pled a Free Exercise claim under *Lukumi, Masterpiece,* and *Trinity Lutheran*.

To survive a motion to dismiss, Bethel need only plead sufficient facts to plausibly state a claim for relief under the Free Exercise Clause. Bethel has alleged facts (which must at this point be taken as true) that the BOOST advisory board applied the BOOST nondiscrimination requirement to Bethel in a manner targeted, hostile, and discriminatory towards its religious beliefs. Such non-neutral enforcement triggers strict scrutiny.

The Supreme Court noted last year that religious and philosophical beliefs about marriage "are protected views and in some instances protected forms of expression." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018). And "the First Amendment

---

[7] The Board did not challenge Bethel's standing to raise its other claims under the First and Fourteenth Amendments. *See* Def.'s Mot. to Dismiss at 1, 9-10.

ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths," including those about marriage. *Obergefell v. Hodges,* 135 S. Ct. 2584, 2607 (2015). Bethel has alleged that it holds sincere religious beliefs about the nature of marriage and the sexes, and it complies with these beliefs as an exercise of its faith in the operation of Bethel Christian Academy. Compl. ¶¶ 26-33, 48-49, 165-170. Defendants do not dispute this.

Instead, the Board contends that the BOOST nondiscrimination requirement is a neutral law of general applicability that evades strict scrutiny. Yet Bethel has alleged facts showing the non-neutrality of the Board's application of the BOOST nondiscrimination requirement to Bethel, thereby triggering strict scrutiny in three separate ways.

### A. The BOOST nondiscrimination provision, as applied, shows religious targeting under *Lukumi.*

First, Bethel has alleged facts showing that the Board enforced the BOOST nondiscrimination requirement in a manner that targeted Bethel's religious beliefs. As the Supreme Court explained in *Lukumi*, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral" and must satisfy strict scrutiny. 508 U.S. at 533. The Free Exercise Clause bars even "subtle departures from neutrality" on matters of religion. *Id*. at 534. This concern is particularly acute where the government is targeting religious *beliefs*, as opposed to religious *practice*. *Id.* at 533 ("[A] law targeting religious beliefs as such is never permissible ….") (citing *McDaniel v. Paty*, 435 U.S. 618, 626 (1978)).

If it is impermissible to pass a law targeting religious beliefs (and it is), then it is equally impermissible to *apply* a law to target those same beliefs. And that is what Bethel pleads the Board has done. Contrary to Defendants' argument, Bethel does not contend that the Maryland legislature passed the BOOST nondiscrimination provision to target Bethel. *See* Def.'s Mot. to Dismiss at 15.

Instead, Bethel has pled that the Board *applied* the BOOST nondiscrimination provision in a way evidencing religious targeting. Compl. ¶¶ 173-190.

The Board does not contend that Bethel ever discriminated based on sexual orientation, and Bethel pled that it fully complied with all the State's eligibility requirements to participate in the 2016-2017 and 2017-2018 BOOST voucher program. Compl. ¶ 173. Bethel also pled that it repeatedly explained to the Board that it does not discriminate based on sexual orientation. Compl. ¶¶ 103-04, 118-19; *see also* Compl. Ex. 3 at 0070; Compl. Ex. 4 at 0072; Compl. Ex. 5 at 0074.[8] Bethel repeatedly explained to the Board that all students (who are below Maryland's age of consent) must refrain from sexual communication and sexual conduct of any type, "whether heterosexual or homosexual." Compl. ¶¶ 52-53; Compl Ex. 3 at 0070; Compl. Ex. 5 at 0074. And it informed the Board that it does not require students to "*agree* with the school's Statement of Faith or specific beliefs." Compl. Ex. 5 at 0074 (emphasis in original); *see also* Compl. ¶ 43.

Despite this, and despite the plain limitations of the then-in-effect nondiscrimination policy to sexual orientation discrimination in admissions, the Board disqualified Bethel because of its religious beliefs about marriage. The Board stated that a student "may reasonably view [Bethel's statement of beliefs], on its face, as a prohibition on students with a non-heterosexual identity because it expects all students to align their conduct to the view of marriage as a covenant between one man and one woman (i.e., heterosexual)." Compl. Ex. 6 at 0076; *see also* Compl. ¶ 110.

As an initial matter, the Board ignored the BOOST program's explicit protection against "any rule, regulation or policy that conflicts with [a school's] religious or moral teachings." Compl. ¶ 68; Compl. Ex. 2 at 0061. It also ignored the 2017-2018 program language's explicit

---

[8] The Court may consider documents attached to the complaint on a motion to dismiss. *See* Fed. R. Civ. P. 10(c); *see also Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating same).

14

application to *admissions*. Compl. ¶ 67; *see also* Compl. Ex. 6 at 0077 (the Board twice referenced a "discipline policy" in its letter disqualifying Bethel). This blatant departure from the text demonstrates religious targeting.

Moreover, without *any* violation on Bethel's part, the Board kicked Bethel out of BOOST due to the religious language in its handbook. The Board offered to restore Bethel's eligibility for the 2019–2020 school year if it revised the language in its student handbook. Compl. ¶ 140. To underscore the point, the Board subsequently provided examples of permissible and impermissible statements of faith from other religious schools. Compl. Ex. 8 at 0082–92. Bethel's religious beliefs—not its conduct—were the problem. The Board has targeted Bethel because of Bethel's religious beliefs and thus "must undergo the most rigorous of scrutiny." *Lukumi*, 508 U.S. at 546.

### B. The BOOST nondiscrimination provision, as applied, shows hostility towards Bethel's beliefs under *Masterpiece*.

Bethel has also pled that Defendants evidenced hostility towards Bethel's religious beliefs. Compl. ¶¶ 173-190. The Supreme Court has made clear that if "impermissible hostility toward … sincere religious beliefs" is the motivation for a government's objection to religious conduct, that government action is unconstitutional. *Masterpiece*, 138 S. Ct. at 1729.

The Court in *Masterpiece* noted that Colorado had "disparage[d] [the baker's] religion in at least two distinct ways: by describing it as despicable, and also by characterizing it as merely rhetorical—something insubstantial and even insincere." *Id.* In an opinion joined by seven Justices, the Court held that "[t]his sentiment is inappropriate for a Commission charged with the solemn responsibility of fair and neutral enforcement of … antidiscrimination law." *Id.* Further, the Court noted that government "cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Id.* at 1731.

Here, the BOOST Board has passed judgment on and presupposed the illegitimacy of Bethel's religious beliefs and practices. At the May 3, 2018, BOOST Board meeting, a board member stated that Bethel and similar BOOST schools likely thought in good faith that they were complying with the nondiscrimination requirement for the last two years before getting caught up in the Board's new enforcement. Defendant and Board Chairman Matt Gallagher interjected, with sneering tone: "You mean caught up with the fact that they signed an assurance illegally?" Compl. ¶ 107.[9] The Board repeatedly probed and parsed Bethel's religious beliefs. Compl. ¶¶ 102, 110, 117. Mr. Gallagher also insisted that the burden of proof was on the schools to prove that they *were not* discriminating—that is, to prove a negative—and to comply with a gender identity requirement that did not exist yet. Compl. ¶¶ 108, 110-12.[10] This demonstrates religious hostility that is "inappropriate for a [Chairman] charged with the solemn responsibility of fair and neutral enforcement of [Maryland's BOOST] antidiscrimination law." *Masterpiece Cakeshop*, 138 S. Ct. at 1729.

Defendant's arguments go to the merits—weighing and interpreting the evidence—of Bethel's claims, not its pleading. Bethel has plausibly pled the Board passed judgment on and presupposed the illegitimacy of Bethel's religious beliefs and practices, while disregarding Bethel's insistence that it does not and will not discriminate based on sexual orientation.

Moreover, irregularities in the decision-making process are highly probative of discriminatory motives. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cty., Maryland,*

---

[9] *See also* May 3, 2018, BOOST advisory board meeting audio at 13:30-13:37 http://archives.marylandpublicschools.org/S/Audio/BOOSTMeeting050318.mp3 (last visited September 12, 2019).

[10] *See also* May 3, 2018, BOOST advisory board meeting audio at 1:12:51-1:13:03 and 1:14:41-1:15:34 http://archives.marylandpublicschools.org/S/Audio/BOOSTMeeting050318.mp3 (last visited September 12, 2019).

915 F.3d 256, 263–64 (4th Cir. 2019), *as amended* (Feb. 25, 2019) (holding that plaintiffs

sufficiently pled RLUIPA religious discrimination claim). The Fourth Circuit has recognized that

"the specific sequence of events leading up to the particular decision being challenged, including

any significant departures from normal procedures" is probative of whether a decision-making

body was motivated by discriminatory intent. *Reaching Hearts Int'l., Inc. v. Prince George's Cty.*,

584 F. Supp. 2d 766, 781 (D. Md. 2008) (citing *Sylvia Development Corp. v. Calvert Cty., Md.*,

48 F.3d 810, 819 (4th Cir. 1995). And here, Defendants' decision-making process evidenced

several irregularities that are probative of hostility and discriminatory intent. For example, Bethel

pled that the Board went into closed session—for the first time in the Board's history—when

considering whether to revoke Bethel's eligibility for BOOST. Compl. ¶¶ 122-129; *see also* Def.'s

Mot. to Dismiss at 7 ("the BOOST Board entered into closed session…."). And it did so without

giving a reason or preparing a written closing statement as required by the Open Meetings Act.

Compl. ¶¶ 122-126. The Board voted on Bethel's eligibility in open session, Compl. ¶ 129, but did

not do any deliberating in open session, Compl. ¶ 128. This of course suggests that the Board did

its deliberating in closed session, a lack of transparency that is probative of religious hostility, as

well as a violation of the Open Meetings Act.  *See Cmty. and Labor United For Baltimore Charter

Comm. (CLUB) v. Baltimore City Bd. Of Elections*, 832 A.2d 804, 811 (Md. 2003) (holding that

City Council's Open Meeting Act violations were evidence that the Council was trying to avoid

public scrutiny of its decisions).[11]

But even after deeming Bethel ineligible in June 2018, the Board waited until August 2018

to inform Bethel and parents of its decision—leaving Bethel scrambling to supplement financial

---

[11] Open Meetings Act violations are subject to judicial review and may result in a fine or the action
in question being voided. Md. Code GP §§  3-401, 3-402; *Cmty. and Labor United For Baltimore
Charter Comm. (CLUB) v. Baltimore City Bd. Of Elections*, 832 A.2d 804, 811 (Md. 2003).

aid to these families and financially vulnerable parents scrambling to find alternative educational options for their children. Compl. ¶¶ 129, 134, 143-44. Bethel has plausibly pled hostility and decision-making irregularities sufficient to prevail against a motion to dismiss.[12]

### C. The BOOST nondiscrimination provision, as applied, expressly discriminates against Bethel's religious beliefs under *Trinity Lutheran*.

Bethel has pled that the Board enforced the BOOST nondiscrimination provision against Bethel solely because of its religious character and beliefs. Compl. ¶¶ 177-185. Such blatant discrimination is express discrimination and must satisfy strict scrutiny.

Any "policy [which] expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character … imposes a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Trinity Lutheran Church*, 137 S. Ct. at 2021. In *Trinity Lutheran*, a church-run preschool was denied the "right to participate in a government benefit program" solely because of its "religious character." *Id.* at 2022. The Court emphasized that "[t]he express discrimination against religious exercise here is not the denial of a grant, but rather the refusal to allow the Church—solely because it is a church—to compete with secular organizations for a grant." *Id.* The Court also emphasized that the government cannot "regulate or outlaw conduct because it is religiously motivated." *Id.* at 2021. Nor may it "discriminate against 'some or all religious beliefs.'" *Id.* at 2021; *accord McDaniel v.*

---

[12] The Board does not contest the ripeness of Bethel's claims. But it alleges in its discussion of Bethel's Free Exercise hostility claim that Bethel could have appealed its exclusion from BOOST. *See* Def.'s Mot. to Dismiss at 17, n. 6. If true, the Board failed to advise Bethel of its right to appeal in its decision letter of August 8, 2018. *See* Compl. Ex. 6. Moreover, exhaustion of administrative remedies is not required under Section 1983. *See Patsy v. Board of Regents,* 457 U.S. 496, 512 (1982).

*Paty*, 435 U.S. 618, 626 (1978) ("The Free Exercise Clause categorically prohibits government from regulating, prohibiting, or rewarding religious beliefs as such.").

Bethel has pled this same express discrimination. Bethel has not and will not discriminate based on sexual orientation. Compl. ¶¶ 7, 47, 139; Compl. Ex. 3 at 0070, Compl. Ex. 4 at 0072, Compl. Ex. 5 at 0074. The Board has enforced the BOOST nondiscrimination policy specifically to target disfavored religious belief because. Compl. ¶¶ 176-188. And like the church in *Trinity Lutheran*, Bethel would still be eligible for BOOST but for its religious beliefs. The Board made this unmistakably clear when it offered Bethel a chance to censor its religious views to regain BOOST eligibility. Compl. ¶¶ 140-41. Bethel, like Trinity Lutheran, simply asks to "participate in a government benefit program without having to disavow its religious character." *Trinity Lutheran*, 137 S. Ct at 2022.

The Board's express discrimination is even more clear in light of the BOOST religious conscience exemption, the State's purported interest in "ensuring that Maryland students have access to high-quality, affordable and diverse educational options," and its underhanded clawback demand.[13] Such blatant discrimination "must be subjected to the 'most rigorous' scrutiny." *Trinity Lutheran*, 137 S. Ct. at 2024 (quoting *Lukumi*, 508 U.S. at 546). And, as in *Trinity*, the right solution is not simply to exclude Bethel from the government program—it is to require the government to treat religion with a neutral hand. *See id*. at 2024-25.

---

[13] *About Us*, Maryland BOOST, https://www.educationmaryland.org/ (last visited September 17, 2019). Courts may take judicial notice of matters of public record, *see U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014), and "routinely take judicial notice of information contained on state and federal government websites," *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

**D.  The Board cannot satisfy strict scrutiny.**

To satisfy strict scrutiny, a law "must advance 'interests of the highest order' and must be narrowly tailored in pursuit of those interests." *Lukumi*, 508 U.S. at 546 (quoting *McDaniel v. Paty*, 435 U.S. 618, 628 (1978)). To determine whether there is a compelling interest, courts must "scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Burwell v. Hobby Lobby*, 573 U.S. 682, 726–27 (2014) (internal quotation marks and citation omitted). "[B]roadly formulated interests" are insufficient. *Hobby Lobby*, 573 U.S. at 726–27. In practical terms, the test is not whether Defendants can come up with a generalized compelling interest (such as preventing discrimination in education, *see* Def.'s Mot. to Dismiss, at 25-28), but whether that interest is particularized *as to Bethel*. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–32 (2006) (strict scrutiny "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.").

The Board cannot. As discussed above, Bethel has not discriminated based on sexual orientation, nor do its policies allow for it. And it is unclear how Defendants' interest in banning sexual orientation discrimination in education could be compelling when Maryland public schools—which are entirely publicly funded—are not required to comply with a similar sexual orientation nondiscrimination provision.[14] The Board cited bullying and harassment: Bethel prohibits bullying and harassment on any basis. Compl. Ex. 1 at 0035. The Board cited dignity: Bethel—as a matter of religious conviction—affirms the dignity and value of every person as

---

[14] Maryland public schools are not required to comply with the BOOST nondiscrimination provision, nor are Plaintiff's counsel aware of any comparable legal prohibitions against Maryland public schools discriminating against students based on sexual orientation.

created in God's image. *Id.* at 0009, 0034. There is no compelling interest in sheltering the public from ideas it dislikes. *See Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). It is therefore unclear what harm the Board believes it is preventing by excluding Bethel.

Worse, the Board undermines the actual stated interests of the program in "ensuring that Maryland students have access to high-quality, affordable and diverse educational options" by excluding Bethel.[15] Absent any evidence of harm, the Board has no compelling interest in exceeding the scope of its own law to exclude Bethel from BOOST, nor can it show that it employed the least restrictive means of promoting nondiscrimination. This requirement is "exceptionally demanding" and requires the government to "show[] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Hobby Lobby*, 573 U.S. at 728. A policy fails this prong if the "interests could be achieved by narrower [policies] that burden[] [the right] to a far lesser degree." *Lukumi*, 508 U.S. at 546.

Here, the least restrictive alternative is already apparent: do not enforce the ban on sexual orientation discrimination beyond what the law actually authorizes. The Board's actions in excluding Bethel for its religious beliefs about marriage are dramatically overinclusive to any purported ends of stopping actual discrimination. The Board cannot claim that censorship is the least restrictive way to prevent discrimination without evidence that discrimination has even occurred.

---

[15] *About Us*, Maryland BOOST, https://www.educationmaryland.org/ (last visited September 17, 2019).

**III.    Bethel pled an Establishment Clause claim, with or without the *Lemon* test.**

Regardless of whether this Court applies the *Lemon* test, Bethel has pled an Establishment Clause violation. Under *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the government violates the Establishment Clause if it fails any one of this three part test: 1) lacks a primarily secular purpose, 2) advances or inhibits religion, or 3) excessively entangles the government with religion. *Id*. at 612-13.

The BOOST nondiscrimination provision, as applied, violates prong three of *Lemon*. The Board disqualified Bethel from BOOST not based on any evidence of sexual orientation discrimination, or even based on a policy that allowed sexual orientation discrimination. Rather, by concluding that compliance with Bethel's religious beliefs might be "reasonably view[ed]" as prohibiting students with a "non-heterosexual identity," Compl. Ex. 6 at 00076, the Board substituted its own interpretation of Bethel's beliefs for the church's—and the "inference[] of culpability [is] plausible," *Carter v. SNC-Lavalin Constructors, Inc.*, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019).

The Board argues that the Supreme Court overruled *Lemon* in *American Legion v. American Humanist Association*, 139 S. Ct. 2067 (2019). In considering a war memorial shaped like a cross, the Court in *American Legion* noted *Lemon*'s inaptitude for addressing cases that involve the celebratory or commemorative use of religious words or symbols. *Id*. at 2081-82. The majority did not explicitly overrule *Lemon*. *But see id.* at 2101-02 (Gorsuch, J. concurring).

Nevertheless, even without the *Lemon* test, Bethel has pled an Establishment Clause violation because the Board intruded into questions of church doctrine and church autonomy. *See, e.g., Presbyterian Church v. Hull Church*, 393 U.S. 440 (1969) (holding law unconstitutional that required civil courts to interpret church doctrine and the significance of those doctrines); *Kedroff*

*v. St. Nicholas Cathedral*, 344 U.S. 94 (1952) and *Kreshik v. St. Nicholas Cathedral*, 363 U.S. 190 (1960) (The First Amendment includes "a spirit of freedom for religious organizations, an independence from secular control or manipulation – in short, power to decide for themselves, free from state interference matters of church government as well as those of faith and doctrine."); *cf Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 186 (2012). Bethel must be free to interpret its own doctrine and explain the application of that doctrine without the government second-guessing—or worse, substituting its own interpretation of—the Church's religious beliefs.

*Bob Jones University v. U.S.*, 461 U.S. 574 (1983) is inapposite. *Bob Jones* presented the question of whether schools with racially discriminatory policies could qualify as tax-exempt under the IRS code; it did not involve the IRS probing into the school's religious beliefs and interpreting those beliefs for the school. *See id.*

Bethel has pled that Defendants substituted their own interpretation of Bethel's religious beliefs for Bethel's assurances that its beliefs do not result in sexual orientation discrimination. Compl. ¶¶ 148, 291-96. Therefore, Bethel has stated a claim upon which relief can be granted.

## IV. Bethel pled a Free Speech claim because the BOOST nondiscrimination provision regulates protected speech, not just conduct.

The State argues that Bethel cannot prevail on its Free Speech claim because the BOOST nondiscrimination requirements regulate conduct, not speech. But "[s]peech is not conduct just because the government says it is." *Telescope Media Group v. Lucero*, 2019 WL 3979621, at *5 (8th Cir. Aug. 23, 2019). And Bethel has plausibly pled that the Board infringed its protected speech.

Certainly, the sexual orientation nondiscrimination provision facially regulates conduct like considering an applicant's sexual orientation in the admissions process, or declining an

applicant's request for admission based on "homosexual status." But that is not how Board applied the provision to Bethel. As Bethel pled, the Board does not claim that Bethel asked about an applicant's sexual orientation or turned away students on that basis. Compl. ¶ 134; Compl. Ex. 6 at 0076. Bethel does not have a policy of discriminating based on sexual orientation. Compl. ¶¶ 7, 47, 139; Compl. Ex. 4 at 0072. Perhaps most tellingly, the Board never demanded that Bethel alter its *conduct* to regain BOOST eligibility—it only demanded that Bethel *change its message*. Compl. ¶¶ 134, 140.

The Board cannot "foreclose the exercise of constitutional rights by mere labels." *See National Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429 (1963). Creating and disseminating information—as Bethel has done via its handbook—is protected speech within the meaning of the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

Furthermore, Bethel has a right to communicate its religious beliefs. *See Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) ("private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression."). It has a right to require its students to be respectful of those beliefs. It has right to prohibit the minor children in its care (who are all under Maryland's age of consent) from engaging in sexual communication or conduct. Because Bethel has a right to enforce these conduct policies, it therefore has a right to communicate them.

Defendants' "White Applicants Only" example is inapplicable. Title VII makes race discrimination in employment unlawful, so the government can lawfully prohibit the incidental speech announcing an intent to violate the law. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006). But there is no corollary here. Bethel does not have an admissions policy that excludes students based on sexual orientation, or homosexual

status, or a "non-heterosexual identity," or any other iteration Defendants may use. *See* Mot. to Dismiss at 1, 3, 21; Compl. Ex. 6 at 0076. Bethel's admissions policy is silent as to orientation—because Bethel does not take it into account. Compl. ¶¶ 118-19. The Board is not stopping discrimination: it is editing Bethel's religious statements.

Nor does *Rumsfeld* help. In *Rumsfeld*, the Court determined that a law requiring law schools to admit military recruiters regulated conduct, not speech. *See* 547 U.S. at 60. The law affected "what [the] schools must *do*—afford equal access to military recruiters—not what they must *say.*" *Id.* (emphasis in original). The opposite is true here. As applied, the BOOST nondiscrimination provision requires Bethel to *change its message* (its handbook) to regain eligibility, Compl. ¶¶ 140, 213-218—not alter its conduct. And the examples of the lengths that various Maryland religious schools were forced to go to retain BOOST eligibility and serve low-income students demonstrates that *altering the speech in their handbooks* was the price of program participation. Compl. ¶ 141; Compl. Ex. 8. The Board has therefore regulated Bethel's protected speech.

Bethel has further pled that the Board's application of the nondiscrimination requirement to Bethel discriminated against not just the message of its handbook (content), but also based on the particular viewpoint expressed. Compl. ¶¶ 140, 205-210. If Bethel's student handbook had articulated a message that expressed support of same-sex marriage or gender identity, its message and viewpoint would not have been censored. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). And viewpoint-based regulations are an "egregious form of content discrimination" where the government targets "particular views taken by speakers on a subject." *Id.* at 829. As such they are subject to strict scrutiny.

25

Finally, Bethel has pled that the BOOST nondiscrimination requirement, as applied, conditions eligibility to BOOST on altering the school's protected speech. Compl. ¶¶ 140, 221. But the government cannot use a funding program to silence unfunded, private speech that it dislikes. The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected...freedom of speech even if he has no entitlement to that benefit." *Agency for Int'l Dev. v. AOSI*, 570 U.S. 205, 214 (2013) (internal quotations omitted); *see Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991) ("A statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech.").

Unlike other situations that properly define a government funding program, the Board's application of the BOOST nondiscrimination requirement to Bethel "reach[es] outside it" to pose an undue burden Bethels' free speech. *AOSI*, 570 U.S. at 217. Such unconstitutional conditions are subject to strict scrutiny. And as Bethel pled, Compl. ¶¶ 223-225, and as discussed above in Section II.D., the Board cannot pass this rigorous test.

V.   **Bethel pled Fourteenth Amendment claims because it has a property interest in BOOST, the program terms are vague, the Board's actions fail scrutiny, and parents have a right to choose a faith-based education for their children.**

A.  **Bethel pled a property interest in the $102,600 clawback.**

The Board demanded that Bethel pay a $102,600 clawback. Compl. ¶¶ 9, 136. This ex post facto monetary penalty is sufficient to confer on Bethel a property interest in its own money. *See, e.g.*, *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253 (4th Cir. 2005) (prisoner had a property interest in funds being deducted from his account to pay for housing); *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001) (plaintiff "clearly has a property interest in her money.").

**B.  The BOOST program terms are vague.**

The Board argues that the BOOST program terms are not vague because those same terms are used in completely separate statutes elsewhere in Maryland law, statutes that the BOOST budget language does not reference. That is not how statutory interpretation works.

Bethel has pled that it does not discriminate in student admissions based on sexual orientation, and repeatedly informed the Board of that fact. Compl. ¶¶ 103-04, 118-19, 234-35; Compl. Ex. 3 at 0070; Compl. Ex. 4 at 0072; Compl. Ex. 5 at 0074. Nevertheless, the Board concluded that Bethel's admission policy—which makes no reference to sexual orientation—could be "reasonably viewed" as a prohibition on students with a "non-heterosexual identity" in light of Bethel's discipline policy. Compl. ¶¶ 236-38; Compl. Ex. 6 at 0077. Whatever the plain meaning of "sexual orientation discrimination in admissions," that meaning was not the one applied by the Board. In other words, Defendants used vague and illusory standards to exclude Bethel and demand a $102,600 windfall. Compl. ¶ 242.

Furthermore, there is a distinction between understanding what a term means, and understanding what *discrimination based on that term* means. The Board's argument that Bethel knows what biological sex means so it "must logically know what a person's gender identity or expression may be" is nonsensical. *See* Def.'s Mot. to Dismiss at 31. Bethel understands what it means to discriminate based on an innate, immutable, and objectively verifiable category like biological sex. But it is far from clear what qualifies as discrimination based on a subjective, fluid, and self-identified category like gender identity—and the State provided no guidance. Compl. ¶¶ 246-47. Does BOOST mandate that schools use certain pronouns? Must Bethel affirmatively allow students to choose to play on the athletic team of their choice? Or allow them to use the sex-separated facilities of their choice? And given the Board's expansive enforcement of its sexual

orientation nondiscrimination in admission policy, it is not remotely clear what the Board expects of BOOST schools as it relates to gender identity.

### C. The Board's decision to exclude Bethel while allowing similarly-situated schools to remain eligible fails scrutiny.

The Equal Protection Clause simply requires that the government treat similarly-situated entities alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Bethel believes that marriage is the union of a man and a woman, prohibits all students from engaging in any sexual conduct or communication, and does not discriminate based on sexual orientation. Compl. ¶¶ 269-71. Bethel has pled that schools with substantially similar beliefs and policies on marriage and sexual conduct—Broadfording Christian Academy and Grace Academy—retained their BOOST eligibility at the June 21, 2018, meeting where the Board voted to disqualify Bethel. Compl. ¶¶ 272-279. Bethel has pled that though these schools share religious beliefs and conduct policies, the Board treated them better than it treated Bethel—without any rational justification for the difference in treatment. Compl. ¶¶ 279-285.

Because the discriminatory treatment rests on religion, a fundamental right, the Board's conduct must be subject to strict scrutiny. *See Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County, Maryland*, 915 F.3d 256, 265 (4th Cir. 2019) ("the free exercise of religion is a fundamental constitutional right."). As discussed above, it cannot justify its arbitrary and discriminatory treatment of Bethel.

### D. Parents have a right to choose a faith-based education for their children.

The Constitution protects parents' rights to direct the education of their children, to choose private education over public education, and to choose religious schools over nonreligious schools. *See, e.g., Committee for Public Educ. & Religious Liberty v. Nyquist,* 413 U.S. 756, 788 (1973) (recognizing that a state cannot prevent a parent from educating child in religious

school); *Wisconsin v. Yoder,* 406 U.S. 205 (1972) (state cannot require members of Amish Church to send children to public school after 8th grade); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925) (state cannot require that children attend public schools rather than private schools). The right of parents to direct the upbringing and education of their children is a Fourteenth Amendment liberty interest. *See Pierce*, 268 U.S. at 534-35.[16] And that interest may be asserted by schools. *See id.* at 535. Bethel has pled that, without any evidence of a policy violation, the Board gratuitously excluded Bethel from BOOST. Compl. ¶ 179. In fact, Defendants' enforcement of the BOOST nondiscrimination provision targets Bethel based on its religious beliefs about marriage and thereby infringes the rights of parents to choose a distinctly religious education for their child. Compl. ¶¶ 259-60. Bethel has therefore stated a plausible claim for relief.

**CONCLUSION**

Bethel has plausibly pled claims upon which relief can be granted. Therefore, the Defendants' motion should be denied.

---

[16] For clarity, this is a due process claim, not an equal protection claim as Defendants state on page 34 of their brief. *Cf.* Compl. ¶ 254.

Dated this 17th day of September, 2019.     Respectfully submitted,

*/s/ John R. Garza*
John R. Garza
MD Fed. Dist. Court # 01921
GARZA LAW FIRM, P.A.
17 W. Jefferson Street
Rockville, MD 20850
Telephone: (301) 340-8200
Fax: (301) 761-4309
Email: jgarza@garzanet.com

David C. Cortman*
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road, Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Fax: (770) 339-6744
Email: DCortman@ADFlegal.org

Christiana M. Holcomb*
Christen M. Price*
Gregory S. Baylor*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
Email: CHolcomb@ADFlegal.org
Email: CPrice@ADFlegal.org
Email: GBaylor@ADFlegal.org

*Counsel for Plaintiffs*

*\*Admitted Pro Hac Vice*