# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **BETHEL MINISTRIES, INC.,** | * |
| Plaintiff, | * |
| v. | * Civil Case No.: SAG-19-01853 |
| **DR. KAREN B. SALMON,** *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Bethel Ministries, Inc., ("Bethel") filed a Complaint against Maryland State Superintendent Dr. Karen B. Salmon ("Superintendent Salmon") and all seven members of the advisory board for the Broadening Options and Opportunities for Students Today ("BOOST") Program (collectively, "Defendants"). Defendants filed a Motion to Dismiss, ECF 16, along with a supporting memorandum of law, ECF 16-1. Bethel filed an opposition, ECF 17, and Defendants filed a reply, ECF 18. I have considered all of the filings, and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' Motion to Dismiss is denied.

## I. FACTUAL BACKGROUND

The facts are derived from Bethel's Complaint, ECF 1, and are accepted as true for purposes of this Motion. All reasonable inferences to be drawn therefrom are drawn in Bethel's favor.

Bethel Christian Academy

Bethel is a Pentecostal Christian Church located in Savage, Maryland. ECF 1 ¶ 26. As part of the Church's mission, it operates Bethel Christian Academy, a private school for students in preschool through eighth grade.[1] *Id.* ¶ 28. Bethel is "unabashedly Christian," and outwardly shares its Christian beliefs with prospective applicants. ECF 17 at 4.

Bethel summarizes its religious beliefs and related practices in its Parent/Student Handbook. The handbook contains a "statement of nondiscrimination," which states, in relevant part, that Bethel "does not discriminate on the basis of race, color, national and ethnic origin in administration of its educational policies, admissions policies, scholarship and loan programs, and athletic and other school-administered programs." ECF 1-4 at 8. Bethel does not include sexual orientation or gender identity in its statement of nondiscrimination. *See id.* In the next paragraph, the handbook says,

> It should be noted, however, that Bethel Christian Academy supports the biblical view of marriage defined as a covenant between one man and one woman, and that God immutably bestows gender upon each person at birth as male or female to reflect his image … faculty, staff, and student conduct is expected to align with this view.

*Id.*

Irrespective of any language in the handbook, Bethel does not consider sexual orientation in the admissions process. Admissions at Bethel is a competitive process based on a formal entrance exam, an evaluation of previous grades, and a pre-enrollment interview. ECF 1 ¶ 41. Once students are admitted, the school's policies apply equally, regardless of a student's sexual orientation or sexual attraction. *See* ECF 1 ¶ 54. For example, the student conduct policy prohibits *any* communication of a sexual nature and *any* harassment, physical contact, or public displays of affection. *See* ECF 1 ¶ 52–53 (emphasis added).

---

[1] For purposes of this Motion, Bethel Ministries, Inc. and Bethel Christian Academy are jointly referred to as "Bethel."

BOOST Program

Maryland's legislature established the BOOST program in 2016, and has reauthorized funding in each subsequent year. ECF 1 ¶ 60–61. The program is administered jointly by the Maryland State Department of Education ("MSDE") and a seven-person BOOST advisory board (the "Advisory Board"). *Id.* ¶ 63. BOOST provides scholarships for students to attend nonpublic schools in Maryland. *Id.* ¶ 62. However, only students that are eligible for the free or reduced-price lunch program may receive scholarships. *Id.* Additionally, scholarships can be used only at schools that meet certain eligibility requirements. Participating schools must sign an assurance stating that they "will not discriminate in student admissions on the basis of race, color, national origin, or sexual orientation." ECF 1-5 at 4. Even so, the nondiscrimination requirement explicitly states that schools are not required "to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings." ECF 1 ¶ 68. Bethel signed the assurance, and started participating in BOOST during the program's inaugural year. *Id.* ¶ 73. Ultimately, seventeen Bethel students received BOOST scholarships for the 2016-2017 academic year, and the number increased to eighteen students for the 2017-2018 academic year. *Id.* ¶ 75–76.

In the fall of 2017, MSDE began investigating participating schools to verify their compliance with the nondiscrimination requirement. ECF 1 ¶ 92. When MSDE specifically requested that schools provide their student handbook, Bethel sent its Parent/Student handbook for the 2017-2018 academic year. *Id.* ¶ 95–96. Throughout the first half of 2018, Bethel corresponded with MSDE about its handbook and related admissions practices. For example, on March 5, 2018, MSDE asked Bethel how its statement on marriage and biological sex was consistent with the school's assurance that it does not discriminate in admissions based on an applicant's sexual orientation. *Id.* ¶ 102. Bethel responded with a letter, on March 13, 2018, explaining that the

3

school does not consider sexual orientation in admissions, and that all students are forbidden from engaging in any sexual conduct. *Id.* ¶ 103. Bethel has reiterated numerous times to MSDE and to the Advisory Board that it complies with their nondiscrimination provision. *See, e.g.*, *id.* ¶ 104 (explaining in May 2, 2018 letter that Bethel's statement on marriage and biological sex is consistent with BOOST's nondiscrimination requirement).

The Advisory Board met on May 3, 2018 to discuss Bethel's eligibility for BOOST. *Id.* ¶ 105. At this meeting, Board Member Matthew Gallagher ("Defendant Gallagher") made several derisive comments about Bethel and its views. For example, he described the school's view of marriage as "problematic" and suggested that its policy on biological sex violated the nondiscrimination provision. *See id.* ¶ 110–11. After the May 3 meeting, Defendants requested more information from the school. In response to a follow-up letter from MSDE, Bethel stated that any student who can meet its academic standards is welcome to join the community, regardless of religious beliefs, same-sex attraction, beliefs about marriage, or beliefs about sexual morality. *Id.* ¶ 119.

On June 21, 2018, the Advisory Board met again to consider Bethel's eligibility for BOOST. *Id.* ¶ 121. Without stating a reason for doing so, the Advisory Board members went into closed session. *Id.* ¶ 123. In fact, Defendant Gallagher noted that, prior to the June 21 meeting, the Board had not gone into closed session for three years. *Id.* ¶ 127. Following the closed session, the Advisory Board members voted to exclude Bethel from the BOOST program. *Id.* ¶ 129. On the same day, they voted to deem Broadfording Christian Academy and Grace Academy eligible for BOOST, even though both schools shared Bethel's beliefs and policies on marriage and sexual conduct. *Id.* ¶ 131, 133. On December 12, 2018, MSDE sent a letter (1) notifying Bethel that it was disqualified from BOOST for the 2018-2019 and 2019-2020 academic years, and (2)

demanding repayment of $102,600, for the years Bethel had participated in the program. *Id.* ¶ 136–37. Due to this disqualification, and the resulting lack of funding, at least six students were forced to leave Bethel. *Id.* ¶ 145. Moreover, other families were left scrambling to find alternate sources of financial aid. *Id.* ¶ 143.

Bethel filed its complaint in the present action on June 24, 2019, alleging six counts against Superintendent Salmon and the seven members of the Advisory Board — all in their official capacities. ECF 1. Specifically, pursuant to 42 U.S.C. § 1983, Bethel alleges six violations of the United States Constitution: the Free Exercise Clause of the First Amendment (Count I), the Free Speech Clause of the First Amendment (Count II), the Due Process Clause of the Fourteenth Amendment for vagueness (Count III), the Due Process Clause of the Fourteenth Amendment for interference with parental rights (Count IV), the Equal Protection Clause of the Fourteenth Amendment (Count V), and the Establishment Clause of the First Amendment (Count VI). *Id.*

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the

5

rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650

F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.   ANALYSIS[2]

Section 1983 "provides a cause of action for the deprivation of federal constitutional and statutory rights under color of state law." *Pink v. Lester*, 52 F.3d 73, 74 (4th Cir. 1995). Bethel has plausibly alleged that Defendants violated several of its First and Fourteenth Amendment rights in the course of deeming the school ineligible for BOOST. The nondiscrimination provision passed by the Maryland legislature states, in relevant part, that schools participating in BOOST cannot discriminate on the basis of sexual orientation "*in student admissions*." *See* ECF 1-5 at 4 (emphasis added); *see also* 2016 Md. Laws ch. 143 at 130–35. Critically, Bethel has consistently maintained that the school does not discriminate in student admissions on the basis of sexual orientation. The Advisory Board corresponded with Bethel for more than a year about its admissions process and, specifically, about whether the school was compliant with BOOST's nondiscrimination requirement. Bethel explained, in several written responses, that it does not

---

[2] As a threshold matter, Defendants appear to have withdrawn their 12(b)(1) challenge to Bethel's standing. *See* ECF 18 at 2. In any event, religious corporations generally have standing to assert their own interests. *See, e.g.*, *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1306 (11th Cir. 2006). Additionally, schools generally have standing to assert the constitutional rights of parents to direct their children's education. *See St. Joan Antida High School v. Milwaukee Pub. School Dist.*, 919 F.3d 1003 (7th Cir. 2019). Nonetheless, Bethel will have to continue to demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

7

consider sexual orientation or sexual attraction when evaluating applications for admission. *See, e.g.*, ECF 1-8, Exh. 5 (stating that Bethel does not require applicants or admitted students to "agree with the school's Statement of Faith or specific beliefs."). In fact, Defendants have not identified any student that Bethel has discriminated against in admissions on the basis of sexual orientation. As such, Bethel alleged in its complaint — which this Court accepts as true at this stage — that it "has not, and will not, discriminate against a student in admissions based on an applicant's sexual orientation." ECF 1 at 2. Despite these assertions, Defendants voted to deem Bethel ineligible for BOOST, based on a perceived lack of compliance with the nondiscrimination provision.

If, as it alleges, Bethel has not discriminated on the basis of sexual orientation in admissions, then it has plausibly alleged that Defendants infringed upon several of its constitutional rights.[3] Namely, Bethel has presented a plausible case that the Advisory Board's determination of ineligibility was motivated by the school's religious affiliation. Bethel is "unabashedly Christian," ECF 17 at 10, and has invoked Christian values in all of its materials that are distributed to prospective applicants and their families. Bethel has plausibly alleged that Defendants deemed it ineligible for BOOST not because of evidence of discrimination in admissions, but because of this Christian identity. In other words, it is plausible that the Advisory Board, in determining that Bethel violated the nondiscrimination provision, unjustly conflated the school's religious beliefs with discriminatory behavior. This possibility is evinced by the Advisory

---

[3] Although Bethel clarified that this case is an as-applied challenge, *see, e.g.*, ECF 17 at 26 ("Bethel has pled that the BOOST nondiscrimination requirement, as applied, conditions eligibility to BOOST on altering the school's protected speech."), I will not restrict the claims to the sexual orientation portion of the nondiscrimination requirement at this stage. BOOST has added a requirement prohibiting discrimination on the basis of gender identity, which was not in effect for the years in which Bethel participated in the program, *i.e.*, for the 2016-2017 and 2017-2018 academic years. *See* ECF 18 at 3. Even so, Bethel has alleged that Defendants treated the nondiscrimination requirement as encompassing gender identity when deeming Bethel ineligible for BOOST. *See* ECF 1 at 14. Furthermore, Bethel has alleged that MSDE notified Bethel that it was disqualified from BOOST for the 2018-2019 and 2019-2020 academic years as well, when gender identity was listed as a protected category. ECF 1 at 16.

8

Board's decision to consider Bethel's eligibility in a closed session, a maneuver that Bethel alleges was a departure from normal procedures.

If the Advisory Board was in fact motivated by Bethel's religious affiliation, then Defendants took several actions that may have infringed upon its First and/or Fourteenth Amendment Rights. For instance, the Complaint alleges that Defendants sent Bethel a document containing examples of how the school might revise its handbook language to retain BOOST eligibility. *See* ECF 1 at 17. In Count II, Bethel has plausibly alleged that Defendants regulated the text of the handbook based on its religious character and content. When the government imposes a financial burden on entities because of the content of their speech, such an action may infringe upon their Free Speech rights under the First Amendment. *See, e.g.*, *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l*, 570 U.S. 205, 214 (2013).

Additionally, in Count V, Bethel has plausibly alleged that Defendants discriminated against it because of the school's religious beliefs, in violation of its rights under the Equal Protection Clause. The Equal Protection Clause commands that similarly situated entities should be treated alike. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Defendants concede that two other schools, Broadfording Christian Academy and Grace Academy, were deemed eligible for BOOST on the same day that Bethel was deemed ineligible. Moreover, according to the Complaint, Broadfording Academy, Grace Academy, and Bethel all have similar beliefs and policies on marriage and sexual conduct. ECF 1 at 16. As such, Bethel alleges that Defendants treated its school differently, without any justification.[4]

---

[4] It is not obvious at this stage whether Defendants discriminated against Bethel and, if so, whether any such discrimination was based on religion or on a different characteristic. Thus, it is unclear whether strict scrutiny or rational basis review would apply. However, Bethel has made its required showing at this stage, regardless of the level of scrutiny.

For similar reasons, Bethel has met its burden with respect to the other counts in the Complaint. The Complaint provides several examples in which Bethel made clear that sexual orientation is not considered in its admissions process. As noted above, in ruling on Defendants' Motion to Dismiss, this Court must take as true that Bethel has not discriminated in admissions on the basis of sexual orientation, and thus, must reasonably infer that Bethel has complied with the nondiscrimination provision enforced by Defendants. Accordingly, Bethel has pled facts amounting to a plausible showing that Defendants deemed the school ineligible for BOOST because of its religious affiliation, thereby depriving it of rights under the Free Exercise Clause (Count I), Due Process Clause for vagueness (Count III), Due Process Clause for interference with parental rights (Count IV), and the Establishment Clause (Count VI).

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF 16, is denied. A separate Order follows.

Dated: November 14, 2019                              /s/
                                                             Stephanie A. Gallagher
                                                             United States District Judge