**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| BETHEL MINISTRIES, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-19-01853 |
| DR. KAREN B. SALMON, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

THIS MATTER concerns a Motion to Stay discovery, filed by Maryland State Superintendent Dr. Karen B. Salmon ("Superintendent Salmon") and all seven members of the advisory board for the Broadening Options and Opportunities for Students Today ("BOOST") Program (collectively, "Defendants"). *See* ECF 49. Bethel Ministries, Inc., filed an opposition, ECF 50, and Defendants filed a reply, ECF 52. I have considered all of the filings, and find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' Motion to Stay will be DENIED.

## I.    FACTUAL BACKGROUND[1]

Bethel Ministries, Inc., is a Pentecostal Christian Church located in Savage, Maryland. ECF 1 ¶ 26. As part of the Church's mission, it operates Bethel Christian Academy (collectively with Plaintiff, "Bethel"), a private school for students in preschool through eighth grade. *Id.* ¶ 28.

---

[1] A more comprehensive factual background is available in this Court's opinion denying Bethel's request for a preliminary injunction: *Bethel Ministries, Inc. v. Salmon, et al.*, ECF 41, 2020 WL 292055 (D. Md. Jan. 21, 2020).

Bethel is "unabashedly Christian," and outwardly shares its Christian beliefs with prospective school applicants.  ECF 19-1 at 18.

Maryland's legislature established the BOOST program in 2016, and has re-authorized its funding in each subsequent fiscal year.  ECF 1 ¶ 60–61.  The program is administered jointly by the Maryland State Department of Education ("MSDE") and a seven-person BOOST advisory board (the "Advisory Board").  *Id.* ¶ 63.  To participate in BOOST, schools must sign an assurance stating that they "will not discriminate in student admissions on the basis of race, color, national origin, or sexual orientation."  ECF 1-5 at 4.  The nondiscrimination requirement specifies that schools are not required "to adopt any rule, regulation, or policy that conflicts with its religious or moral teachings."  ECF 1 ¶ 68.

In the fall of 2017, MSDE began investigating BOOST schools, including Bethel, to verify their compliance with the nondiscrimination requirement.   ECF 1 ¶ 92. Following the investigation, the Advisory Board members voted to exclude Bethel from Boost on June 21, 2018.  *See* ECF 19-18 (transcript of meeting). On December 12, 2018, MSDE sent a letter (1) notifying Bethel that it was disqualified from BOOST for the 2018-2019 and 2019-2020 academic years, and (2) seeking repayment of $102,600 for the years Bethel had participated in the program.  *Id.* ¶ 136–37, ECF 19-11.  Due to this disqualification, and the resulting lack of funding, at least six students were forced to leave Bethel in the 2018-2019 academic year, and three additional students left during the 2019-2020 academic year.  ECF 19-3 ¶ 38, 40.

In 2019, Maryland's General Assembly expanded BOOST's nondiscrimination requirement beyond a school's admissions decisions, and expressly included gender identity/expression as a protected class. ECF 22 at 22. The new requirement mandates that schools will not "discriminate in student admissions, retention, or expulsion or otherwise discriminate

against any student on the basis of race, color, national origin, sexual orientation, or gender identity or expression." 2019 Md. Laws Ch. 565 at 151.

Bethel filed its Complaint in the present action on June 24, 2019, alleging six counts against Superintendent Salmon and the seven members of the Advisory Board — all in their official capacities. ECF 1. Specifically, pursuant to 42 U.S.C. § 1983, Bethel alleged six violations of the United States Constitution: the Free Exercise Clause of the First Amendment (Count I), the Free Speech Clause of the First Amendment (Count II), the Due Process Clause of the Fourteenth Amendment for vagueness (Count III), the Due Process Clause of the Fourteenth Amendment for interference with parental rights (Count IV), the Equal Protection Clause of the Fourteenth Amendment (Count V), and the Establishment Clause of the First Amendment (Count VI). *Id.* This Court denied Defendants' Motion to Dismiss, ECF 16, in an Order dated November 14, 2019. ECF 20, 21. Additionally, this Court denied Bethel's Motion for a Preliminary Injunction, ECF 19, in an Order dated January 21, 2020. ECF 42. The Court granted the parties' joint motion to modify the discovery schedule on February 18, 2020. ECF 46. The discovery deadline is currently scheduled for August 14, 2020.[2] *Id.*

## II.    LEGAL STANDARD

Courts have inherent authority to stay the proceedings of a case. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). The determination "in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the

---

[2] Although the United States District Court for the District of Maryland has suspended most filing deadlines, as a result of the COVID-19 pandemic, discovery in civil cases is expressly exempted from the policy. Nonetheless, parties are expected to continue discovery only if doing so will not contravene public health orders or directives. *See* COVID-19 Pandemic Procedures Order, Misc. No. 20-146 (D. Md. 2020).

expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Georgia Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). "The factors to consider when deciding a motion to stay are: (1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the nonmoving party." *CX Reinsurance Co. Limited v. Johnson*, No. 18-2355, 2020 WL 406936, at *3 (D. Md. Jan. 24, 2020). Additionally, courts consider the length of the requested stay, *Stone v. Trump*, 402 F. Supp. 3d 153, 160 (D. Md. 2019), and whether proceedings in another matter involve similar issues, *Popoola v. MD-Individual Practice Ass'n*, No. 2000-2496, 2001 WL 579774, at *2 (D. Md. May 23, 2001). Importantly, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus, Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *Great W. Casualty Co. v. Packaging Corp. of Am.*, 2020 WL 1234555, at *1 (M.D.N.C. Mar. 13, 2020).

## III.   ANALYSIS

Defendants seek a stay of proceedings based upon a recent Grant of Certiorari by the United States Supreme Court. The Court granted certiorari in *Fulton v. City of Philadelphia* on February 24, 2020. *See* 140 S. Ct. 1104 (Mem) (2020). Defendants contend that the issues presented in *Fulton* are substantially similar to this litigation, such that the eventual decision will prove helpful in resolving this case. *See generally* ECF 49-1. *Fulton* concerns a decision by the City of Philadelphia's Department of Human Services ("DHS") to terminate its relationship with a Catholic social services agency. 922 F.3d 140, 146 (3d Cir. 2019). Philadelphia DHS became aware that Catholic Social Services ("CSS") would not work with same-sex couples when it placed foster children with families throughout the city. *Id.* When DHS decided not to renew its contract with CSS, CSS filed suit and, specifically, sought preliminary injunctive relief. *Id.* However, the

4

district court denied the request for a preliminary injunction, and the Third Circuit affirmed on appeal. *Id.* at 147 (concluding that "[t]he City's nondiscrimination policy is a neutral, generally applicable law, and the religious views of CSS do not entitle it to an exemption from that policy.").

CSS filed a Petition for Certiorari in the United States Supreme Court. As part of its Petition, CSS asked the Court to revisit *Employment Division v. Smith*, 494 U.S. 872 (1990), a case that the Third Circuit relied upon considerably in reaching its decision, 922 F.3d at 153 (explaining that under *Smith*, "[t]he Free Exercise Clause does not, however, relieve an individual of the obligation to comply with a valid and neutral law of general applicability"). Certainly, both the Supreme Court's task in *Fulton*, as well as the ultimate disposition of this case, will require a careful and thorough application of First Amendment precedent regarding the Free Exercise Clause — in addition to the Free Speech Clause and the Establishment Clause.

Thus, considering the first factor, judicial economy, the Supreme Court's decision in *Fulton* might provide useful guidance for this Court's resolution of Bethel's claims. Even so, this Court is disinclined to stay proceedings because of a theoretical possibility. For example, while the Supreme Court may overrule *Smith,* the Justices are just as likely to not only leave *Smith* undisturbed, but also to confine their ruling to the facts presented by *Fulton*. Indeed, in *Trinity Lutheran Church of Columbia v. Comer*, a recent case involving the Free Exercise Clause, the Supreme Court expressly limited its decision to the facts at issue in that action. *See* 137 S. Ct. 2012, 2024 n.3 (2017) ("We do not address religious uses of funding or other forms of discrimination.").

The current matter is readily distinguishable from *Hickey v. Baxter*, 833 F.2d 1005 (4th Cir. 1987), cited in Defendants' motion. *See* ECF 49-1 at 7. In that case, the appellant had sought to enforce a Virginia custody order pursuant to the Parental Kidnapping Prevention Act. *Id.* at *1.

However, the district court stayed proceedings until the Supreme Court heard a case that would address whether the Parental Kidnapping Prevention Act "creates a private cause of action." *Id.* On appeal, the Fourth Circuit affirmed the lower court's decision to stay proceedings. *Id. Baxter* does not dictate that a stay is appropriate in this case. Whereas the Supreme Court's decision would be completely dispositive as to whether the appellant's claims could proceed in *Baxter*, here, by contrast, litigation is almost certain to continue, regardless of the outcome in *Fulton*. Indeed, Defendants do not contend that the Supreme Court's decision will extinguish Bethel's claims, several of which are brought under the Fourteenth Amendment, not the First Amendment. Furthermore, the value of potential guidance from *Fulton* must be weighed against the significant delay that will result for these proceedings. Defendants concede that a *Fulton* decision may not be released until June, 2021. ECF 49-1 at 7. Consequently, a stay could be in place for more than a full year. Moreover, as a result of the current COVID-19 pandemic, and the concomitant disruption to the court system, the Supreme Court's usual timeline may be substantially delayed.[3]

In any event, the remaining two factors cut strongly against granting a stay in this matter. Notably, Defendants did not meaningfully identify any harm that they will suffer by continuing to litigate this matter. Defendants stated that "any new law arrived at in *Fulton* could trigger 'motions for reconsideration under Federal Rule of Civil Procedure 60." ECF 49-1 at 6 (quoting *CX Reinsurance*, 2020 WL 406936 at *6). The possibility that Defendants may incur additional litigation costs is a fairly nominal interest, when compared with the practical effect that a stay would have on Bethel. Namely, granting a stay would all but ensure that this case could not be resolved (or move closer to resolution) until another academic year passes in its entirety. Bethel

---

[3] For instance, this Court takes judicial notice that the Supreme Court has cancelled oral arguments for the remainder of this term. The Supreme Court will, instead, hear a limited number of cases by teleconference. *See Hughes v. Freightliner, LLC*, No. 7:04-CV-0309, 2006 WL 1842997, at *1 (W.D. VA. June 29, 2006) (explaining that "a court may take judicial notice of the proceedings of another court").

has submitted affidavits indicating that it has lost dozens of students who would otherwise rely on BOOST scholarships. *See, e.g.*, ECF 19-3 (affidavit from Principal Dant, stating that Bethel lost six students during the 2018-2019 school year, three students during the 2019-2020 school year, and numerous prospective students in both years). By the nature of the claims presented in this case, a delay of more than a year would have a significant effect on Bethel's enrollment, and its ability to budget for the academic year.  Irrespective of the ultimate result of this matter, Bethel and Defendants would be better served by entering the 2020-2021 school year with this litigation moving closer to a definitive conclusion.

Defendants cite *CX Reinsurance Co.* to support their request for a stay. ECF 49-1 at 3. That case concerned the obligation of the plaintiff insurance company to indemnify landlords for judgments that had been awarded to three creditors. 2020 WL 406936, at *1. The creditors filed a Motion to Stay proceedings, and asked the Court to await decisions in two cases pending before the Maryland Court of Special Appeals. *Id.* at *2. The Court granted the motion because, primarily, the Maryland court was "faced for the first time with a question that bears heavily on the core dispute in the six consolidated cases before [that] Court." *Id.* at *6. By contrast, *Fulton* does not present a question of first impression for the Supreme Court. As Defendants acknowledge, their argument for a stay relies heavily on the possibility that the Justices will overrule existing precedent in *Smith*. Additionally, in *CX*, the plaintiff, in opposing the request for a stay, gave "little indication that it would suffer any beyond harm to its general interest in resolving th[ose] cases expeditiously." 2020 WL 406936, at *6. To the contrary here, as noted above, Bethel faces the prospect of significant harm to its operations if litigation is suspended for an entire school year. This case, unlike *CX*, also involves important First Amendment protections, *i.e.*, interests that merit

increased consideration from courts. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Accordingly, Defendants have not met their burden to show that a stay of discovery is warranted.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Stay, ECF 49, is DENIED. A separate Order follows.

Dated: April 15, 2020                                      /s/
                                                   Stephanie A. Gallagher
                                                   United States District Judge